### BOSTON & M. R. R. v. UNITED STATES.

(Circuit Court of Appeals, First Circuit. March 19, 1920.)

No. 1443.

1. **Internal revenue ☞9—Premium on sale of stock not considered in computing deduction from income of interest paid; "paid-up capital stock."**

   The provision of Corporation Excise Tax Act Aug. 5, 1909, § 38 (2), authorizing corporations to deduct from gross income interest actually paid within the year to an amount "not exceeding the paid-up capital stock," means the paid-up capital stock at par value, and a corporation may not add a premium received on sale of its stock to enlarge such deduction.

2. **States ☞4—Federal tax statute not affected by state statutes.**

   A federal statute imposing a federal tax cannot be abridged or enlarged by force of state statutes.

3. **Words and phrases—"At par;" "above par;" "premium."**

   Corporate stock is "at par" when worth its face value, and when it is worth more is "above par" or at a "premium."

   [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Premium.]

In Error to the District Court of the United States for the District of Massachusetts; George H. Bingham, Judge.

Action by the United States against the Boston & Maine Railroad. Judgment for the United States, and defendant brings error. Affirmed.

Archibald R. Tisdale, of Boston, Mass., for plaintiff in error.

Alonzo H. Garcelon, Sp. Asst. U. S. Atty., of Boston, Mass. (Thomas J. Boynton, U. S. Atty., of Boston, Mass., on the brief), for the United States.

Before JOHNSON, Circuit Judge, and ALDRICH and HALE, District Judges.

ALDRICH, District Judge. [1] Section 38 of the Corporation Excise Tax Law of 1909 (36 Stat. 112), in fixing the basis upon which taxes shall be assessed upon corporations, provides for certain deductions from gross income.

---

Among other deductions from gross income, described for the purpose of ascertaining the net income upon which the tax is to be assessed, the act provides for the deduction of:

"The amount of interest actually paid within the year on its bonded or other indebtedness to an amount of such bonded and other indebtedness not exceeding the paid-up capital stock of such corporation."

The Boston & Maine Railroad, in its tax return for the year 1909, treated premiums (a sum considerably over $5,000,000) received from the sale of stock, when the stock was selling above par, as part of its paid-up capital stock, and as something to be added to the par value, for the purpose of ascertaining the amount of deduction upon the ground of interest upon indebtedness, and by including the interest paid upon the sum representing the premiums thus received from the sale of stock it increased the deduction from the gross earnings considerably more than a million dollars, with the result of decreasing the tax in a very considerable measure below what would have accrued to the government if the return had been computed and the deduction made upon the basis of interest paid upon its outstanding capital stock at its par value.

Judge Bingham, in the District Court, in passing upon this statutory provision, said:

"There is nothing in the language of the clause in question (section 38) that justifies one in concluding that Congress intended that premiums on stock sold by a corporation should be added to its outstanding paid-up capital stock in determining deductions to be made in assessing the tax under this law."

We think the logic of the case is even stronger than that, against the corporation. By this we mean that, beyond the view that there is nothing in the language of the act to justify such a conclusion, there is an express and unmistakable negative against it.

The situation here is one in which the intention of Congress is not only plain, but imperatively plain. The language is:

"The amount of interest actually paid within the year on * * * indebtedness to an amount * * * not exceeding the paid-up capital stock."

Thus the language is not only unmistakably clear, but mandatory. This is so because the words "not exceeding" are express words of limitation—words which control the term "paid-up," and fix the line beyond which the deduction cannot go.

[3] As commonly known, certificates of stock represent the shares. When the shares are at face value they are at par, and when worth more they are above par, or at a premium (Cent. Dict. vol. 4, p. 4271), but by such fluctuations the shares of stock do not lose their identity or character as such, but remain shares of stock; and the sum total of the shares, at par, constitute the capital stock in the sense in which the term is ordinarily used in banking and commerce.

It is quite manifest that Congress used the term "paid-up capital stock" in the par value sense. This would be the common and ordinary understanding of the term; and it is perfectly plain that Congress did not intend a deduction, in this respect, beyond interest paid

on indebtedness to the amount of outstanding capital stock, in the sense in which that expression is ordinarily accepted. And the term "paid-up," in the sense in which it was used in connection with the limitation of "not exceeding," obviously means paid up to par value, but not exceeding that.

Premiums received from the sale of stock are not outstanding capital stock; and they are no more the capital stock of a railroad than is undivided surplus in a bank the capital stock of a bank.

The provisions describing the deductions to be made, in order to ascertain the taxable net income, are addressed to the business public, and to corporations generally, and define the manner in which tax returns shall be made; and, in such circumstances, the rule would be that Congress used the term in the sense of its generally accepted meaning.

[2] Indeed, counsel for the railroad do not seriously disagree with this idea as to the ordinary acceptation of the term, "paid-up capital stock," by business communities and people generally; but they contend that the expression should be influenced, in this special case, by Massachusetts statutes, and particularly by chapter 620 of the Acts of Massachusetts for the year 1908.

We view that state statute as one having an entirely different purpose than that of the federal Excise Tax Law, because it apparently seeks to establish a basis upon which steam and electric railroads and street railways may finance their systems. But, however this may be, there is nothing in the Massachusetts statute which indicates that it was intended as a statute to establish a basis for federal taxation; and, if there were, it would hardly be seriously contended that a state statute would operate to abridge or impair the authority of the federal government, in its own right, to lay a tax, to be enforced under its own terms, under a single rule, and uniformly throughout all the states.

If the principle were once accepted that the express terms of a federal law imposing a federal tax may be abridged, or enlarged, by force of local statutes, the general government, as a result, would be forced to adopt different standards, and differing rules of taxation among the states—varying in accordance with the differing statutes of the various states, though the power to tax for federal purposes resides with a single entity and emanates from a central and paramount government. And, as a result of such diversity, there would be no uniformity, though governments exercise the essential and necessary power to impose the burdens of taxation under the impulse of the rightful and governing principle involved in the cardinal idea of uniformity.

Under the logic of the fundamental and salutary rule of uniformity, unless a contrary intention clearly appears, statutes creating a system under which taxes are to be laid are generally, if not always, accepted as intending a system to work uniformly throughout the domain in which the law is to operate. Hence it follows that the argument that the force of an express provision of a federal statute should be controlled or abridged by a local state statute is wholly inadmissible.

The term "paid-up capital stock," as used in the federal act in question, has been construed by Judge Thomas, through a well-reasoned opinion in the District Court of Connecticut, in the recent case of U. S. v. N. Y., N. H. & H. Railroad, 265 Fed. 331 (T. D. 2896, decided May 17, 1919, by the District Court for the District of Connecticut), and has been under discussion and construction by various executive officials of the government, in which the view we hold has been accepted, and there are numerous adjudicated cases bearing more or less directly upon the question before us. But the plain language of the statute, in our view, renders citation and analysis of cases entirely unnecessary, and there seems no occasion for referring to authorities cited by counsel further than to point out that Greene v. Louisville Ry. Co., 244 U. S. 499, 37 Sup. Ct. 673, 61 L. Ed. 1280, Ann. Cas. 1917E, 88, and Greene v. Louisville Ry. Co., 244 U. S. 522, 37 Sup. Ct. 683, 61 L. Ed. 1291, Ann. Cas. 1917E, 97, which counsel for the railroad urge, are cases which deal with a state tax under a state law, and not with a federal tax imposed by the federal government under its own express statutory provisions.

The judgment of the District Court affirmed, with costs of this court to the defendant in error.