Sinnott, Judge,
delivered the opinion of the court:
The plaintiff, the Atlantic Coast Line Bailroad Company, seeks to recover the sum of $2,642.37, with interest thereon from April 14,1924, which sum plaintiff claims was illegally collected from it by the Commissioner of Internal Bevenue, under authority of section 503 of the revenue act of 1918, 40 Stat. 1104, as taxes on policies of insurance claimed by the commissioner to have been issued by plaintiff.
During all the time herein involved plaintiff was a common carrier by railroad in interstate commerce, operating-railroads or lines of transportation in the States of Virginia, North Carolina, South Carolina, Georgia, Florida, and Alabama. In April, 1899, there was organized, and has since been maintained, under the general auspices of the plaintiff, a certain voluntary association, composed of the employees of plaintiff, known as the “ Belief department of the Atlantic Coast Line Bailroad Company.”
Plaintiff alleges in its petition: “The primary object of this association was to create a trust fund out of which the members contributing thereto and becoming the beneficial owners thereof might be paid certain sums in case of sickness or disability on account of personal injury, and out of which trust fund, in the case of the death of any member, certain sums might be paid to the beneficiary or next of kin designated by such member.”
Employees of the company were permitted voluntarily to become members of the relief fund by filing an application with the superintendent of the department and passing a satisfactory physical examination. When this application was approved by the superintendent there was issued a certificate to the employee, of which the following is a copy:
“ATLANTIC COAST LINE RAILROAD COMPANY RELIEF DEPARTMENT
“ Certificates of Membership in the Belief Fund
“This certifies that-, employed by the Atlantic Coast Line Bailroad Company, is a member of the Belief Fund of the Belief Department of the Atlantic Coast Line Bailroad Company and is entitled to the benefits pro *389 vided by the regulations of the Eelief Department for a member of the - class with - additional death benefits of the first class.”
There are five classes of members, the classification being based upon the regular or usual monthly pay received by the employee.
On the death of a member of the relief fund, payments were made to the beneficiary in varying amounts from $250 to $1,250, according to the member’s classification. In order to become a member the employee agreed to pay, by assignment in advance, into the trust fund of the relief department of the Atlantic Coast Line Eailroad Company a certain portion of his wages.
A member who had been continuously in plaintiff’s service for three years.and a member of the relief fund for one year immediately preceding the termination of his employment could retain his membership for the minimum death benefit only held by him during the last year of his employment by payment, quarterly in advance, in cash, of the necessary amount to cover death benefits only.
Out of something over 20,000 employees of plaintiff there were about 10,000 members of said relief fund. About 400 former employees retained their membership in said relief department as to death benefits. The regulations covering said relief fund provided that an advisory committee shall have general supervision of the operation of said relief department. The advisory committee consisted of plaintiff’s general manager, ex officio a member and chairman, and twelve other members, six chosen annually by plaintiff’s board of directors and six chosen annually by ballot by members of the relief fund.
Plaintiff alleges in its complaint:
“ 6. Your petitioner as an incident of its business as a common carrier, in order to afford the care and protection to its employees for which such association was organized, undertakes on behalf of the beneficial owners of such fund—
“ (a) To collect and hold in trust the contributions or subscriptions made by the members thereof;
“ (b) To pay all expenses of administering the fund so held, including salaries of officers and employees of the relief department; and
*390 “(c) Guarantee to the members or beneficia) owners of such fund that it shall be sufficient to provide the necessary hospital and medical treatment and, in the case of the disability of any member, to pay to him the sum to which he thereby becomes entitled, or, in the case of his death, to pay to his beneficiaries or next of kin the amount to which they thereby become entitled.
“7. For the service thus rendered to the employees who are members of such association in administering said fund, for the guarantee set forth in paragraph 6 of this petition, and for the payment of advances made thereunder, your petitioner receives no monetary consideration, but treats all such sums paid for salaries or for other administrative expenses of said fund, and all sums that it is called upon from time to time to pay into said fund to cover any deficiencies therein, as operating expenses of your petitioner.”
The revenue act of 1918 contains the following provisions pertaining to the issues in the case at bar:
“ Sec. 1 [40 Stat. 1057]. That when used in this act—
“ The term £ person ’ includes partnerships and corporations as well as individuals;
“ The term ‘ corporation ’ includes associations, joint-stock companies, and insurance companies.”
“ Sec. 503 [40 Stat. 1104]. That from and after April 1, 1919, there shall be levied, assessed, collected, and paid, in lieu of the taxes imposed by section 504 of the revenue act of 1917, the following taxes on the issuance of insurance policies: * * *
“ (a) Life insurance: A tax equivalent to 8 cents on each $100 or fractional part thereof of the amount for which any life is insured under any policy of insurance or other instrument, by whatever name the same is called: * * *
‡ ‡ ‡ ‡ ‡
“ (d) Policies issued by any corporation enumerated in section 231, and policies of reinsurance, shall be exempt from the taxes imposed by this section.
“ Sec. 504 [40 Stat. 1104]. That every person issuing policies of insurance upon the issuance of which a tax is imposed by section 503 sha)l make monthly returns under oath, in duplicate, and pay such tax to the collector of the district in which the principal office or place of business of such person is located. Such returns shall contain such information and be made at such times and in such manner as the commissioner, with the approval of the Secretary, may by regulation prescribe. * * * ”
*391 “Sec. 231 [40 Stat. 1076], That the following organizations shall be exempt from taxation under this title:
i't ‡ # ❖
“ (3) Fraternal beneficiary societies, orders, or associations (a) operating under the lodge system or for the exclusive benefit of the members of a fraternity itself operating under the lodge system, and (b) providing for the payment of life, sick, accident, or other benefits to the members of such society, order, or association br their dependents;
* # * * % * *
“ (6) Corporations organized and operated exclusively for religious, charitable, scientific, or educational purposes, or for the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private stockholder or individual;
“ (10) Farmers’ or other mutual hail, cyclone, or fire insurance companies, mutual ditch or irrigation companies, mutual or cooperative telephone companies, or like organizations of a purely local character the income of which consists solely of assessments, dues, and fees collected from members for the sole purpose of meeting expenses.”
Plaintiff contends that sections 504 and 503 of the.revenue acts of 1917 and 1918, respectively, were intended to be, and are, merely reenactments of similar provisions in the Spanish war revenue act of June 13,1898, 30 Stat. 448. It is unquestionable that section 503 of the revenue act of 1918 is a reenactment of section 504 of the revenue act of 1917, but there is a marked difference between the language covering exemptions in said sections 504 and 503 and that in the Spanish war revenue act of 1898, 30 Stat. 461.
While the language in the three acts covering fraternal beneficiary societies, orders, and associations operating under the lodge system is very similar in the three acts, there is a marked difference in that the act of 1898 specifically mentions and exempts “ farmers’ purely local cooperative company or association, or employees’ relief associations operated on the lodge system, or local cooperative plan, organized and conducted solely by the members thereof for the exclusive benefit of its members and not for profit.” (30 Stat. 461.) (Italics ours.)
*392 Here it will be seen that in the act of 1898 exemption is given to “ farmers’ ” purely local cooperative companies or associations and “ employees’ relief associations,” operating not only on the lodge system but also on the local cooperative plan.
As we have before stated, the exemptions in section 503 (d) of the revenue act of 1918, 40 Stat. 1076, are a practical reenactment, in so far as the issues in this case are concerned, of the exemptions in section 11 (a) of the revenue act of 1916, 39 Stat. 766, and also of those in the revenue act of 1917, 40 Stat. 316, section 504 (d), for the act of 1917 embraces by reference thereto the exemptions contained in section 11 (a) of the revenue act of 1916, 39 Stat. 766.
It is disclosed in plaintiff’s brief that when the revenue act of 1917 was reported to the House it contained the following-provision, taken from the revenue act of 1898, as the committee report discloses:
“ Seo. 504. That from and after the first day of June, 1917, there shall be levied, assessed, collected, and paid the following taxes on the issuance of insurance policies:
“(a) Life insurance: A tax equivalent to eight cents on each $100 or fractional part thereof of the amount for which any life is insured under any policy of insurance, or other instrument by whatever name the same is called: Provided, That the provisions of this subdivision shall not apply to any fraternal, beneficiary society or order, or farmers’ purely cooperative company or association or employees' relief associations operated on the lodge system or local cooperative pla/n, organized and conducted solely by the members thereof for the exclusive benefit of its members and not for profits (Italics ours.)
Had this provision referring specifically to “ employees’ relief associations ” remained in the bill, it might well be argued, discarding for the moment any question as to the meaning of the phrase “local cooperative plan,” that it would relieve plaintiff from the tax in question; but it was stricken from the bill by amendment, and in its place the exemptions of section 11 (a) (Third) of the revenue act of 1916, 39 Stat. 766, were incorporated in the 1917 act, by reference thereto, as follows:
*393 “ Sec. 11. (a) Third. Fraternal beneficiary society, order, or association, operating under the lodge system or for the exclusive benefit of the members of a fraternity itself operating under the lodge system, and providing for the payment of .life, sick, accident, or other benefits to the members of such society, order, or association or their dependents ; * * * ”
We have shown that the exemptions in section 231 of the revenue act of 1918, 40 Stat. 1076, were a practical reenactment of section 11 (a) of the revenue act of 1916, 39 Stat. 766, and that the 1917 act also included the provisions of said section 11 (a).
It seems to us that the elimination of the specific provisions in the revenue act of 1917, as first reported to the House, exempting “ employees’ relief associations operated on the lodge system or local cooperative plan, organized and conducted solely by the members thereof for the exclusive benefit of its members and not for profit,” is very persuasive as indicating the intention that they were not to be exempt, unless they may be classed as fraternal beneficiary associations operating on the “lodge system,” which will be discussed hereafter. Yet, as we understand the plaintiff’s contention, it claims that section 231 of the act of 1918 and section 11 (a) of the act of 1916, which are practically identical, means the same thing as the omitted clause.
“ The rejection by Congress of a specific provision contained in an act as originally reported is most persuasive to the conclusion that the act should not be so construed as in effect to include that provision.” (First Fed. Stat. An. 2nd ed., sec. 45.)
“ The fact that this provision measuring the amount of recovery by rebate was omitted from the act, as finally reported to both Houses and passed, is not only significant but so conclusive against the contention of the plaintiff that it quotes — not the report of the conference committee but a statement, made by a member of the Senate conference committee, to support the present argument that section 8 means the same thing as the omitted clause. But while they may be looked at to explain doubtful expressions, not even formal reports — much less the language of a member of a committee — can be resorted to for the purpose of construing a statute contrary to its plain terms, or to make identical *394 that which is radically different.” Penna. R. R. Co. v. International Goal Co., 230 U. S. 184, 198.
“ But it is a familiar canon of interpretation that all former statutes on the same subject, whether repealed or unrepealed, may be considered in construing the provisions that remain in force.” Viterbo v. Friedlander, 120 U. S. 707, 725.
See also United States v. Saunders, 22 Wall. 492; United States v. Farden, 99 U. S. 10.
Plaintiff’s brief shows that when the revenue act of 1898 was under discussion in the Senate the provision with reference to life insurance in the bill contained the following exemption:
“ That the provisions of this section shall not apply to any fraternal beneficiary society or order operated on the lodge system which is organized and conducted by the members thereof for the sole benefit of its members and not profit.”
The above provision is similar to that in (3), section 231, of the revenue act of 1918.
Plaintiff sets forth in its brief the discussion which took place with reference to the question whether the above exemption embraced “ employees’ relief associations ” when conducted for their own benefit and not for profit. Senators Aldrich and Wolcott expressed the opinion that they were within the exemptions.
Plaintiff quotes Senator Aldrich as saying:
“And I understand the lodge system to be an aggregation of employees or farmers or anybody else who carry on beneficiary insurance simply for their own benefit. That language was used in the statute heretofore and it has been construed to apply to that class of organization.”
Plaintiff quotes Senator Spooner as saying:
“ I think the Senator has drawn this so as to include a great many that ought not to be taxed.”
Without entering into a discussion of how far the courts will go in considering the debates in Congress in interpreting statutes, we may observe, that Senator Aldrich’s view was not accepted is indicated by the fact that the provision was subsequently amended to read specifically referring to “ em *395 ployees’ relief associations ” operating both under the “ lodge system ” and “ local cooperative plan,” viz:
“ Provided, That the provisions of this subdivision shall not apply to any fraternal, beneficiary society or order, or farmers’ purely cooperative company or association or employees’ relief associations operated on the lodge system or local cooperative plan, organized and conducted solely by the members thereof for the exclusive benefit of its members and not for profit.” (30 Stat. 461.)
We are not content to rest our decision on any conclusion we may draw from the elimination of specific reference to “ .employees’ relief associations ” from the act of 1917, or its insertion in the act of 1898, however significant or persuasive such action on the part of Congress may appear.
We shall consider whether plaintiff is within any of the exemptions mentioned in (d) of section 503 of the act of 1918, which provides that “ policies issued by any corporation enumerated in section 231 and policies of reinsurance shall be exempt from the taxes embodied by this section.”
Section 1, supra, of the act of 1918 provides that when used in this act—
“ The term ‘ person ’ includes partnerships and corporations, as well as individuals;
“ The term ‘ corporation ’ includes associations, joint-stock corporations, and insurance companies.”
Plaintiff alleges in its petition that “ for the benefit and protection of its employees a certain voluntary association was organized under the general auspices of your petitioner known as the £ relief department.’ ” At other places in the petition the “ association ” is referred to. In the regulations the “ relief department ” is referred to as “ a depailment of the company’s service, of the nature of a mutual benefit association.” Approximately 10,000 employees of plaintiff were members. The affairs of the relief department were managed by executive officers, with duties similar to corporate officers, with an advisory committee exercising executive supervision analogous to' that of the board of directors of a corporation.
Plaintiff’s relief department is certainly within the purview of the language employed by Judge Graham in Hard *396 ware Underwriters et al. v. United States, 65 C. Cls. 267, where he states:
“ The association, is not incorporated, but this does not alter the fact that it is, in substance and in result of its operations, a mutual insurance company or a reciprocal association for the purpose of making insurance and securing protection and paying losses. * * * To say that such an association is a mere place is to say that a written constitution that has been put in operation is still nothing more than a scrap of paper. This association is not a mere place; it is a living entity, doing an insurance business through cooperation of its subscribers with the attorney in fact and advisory committee, and performs all those things necessary to carry pn effectively the business of making insurance.
% % % H; >1: $ ‡
“ An ‘ association5 has been defined, with approval by the Supreme Court, ‘ as a body of persons organized for the prosecution of some purpose, without a charter but having the general form and mode of procedure of a corporation.’ It is clear in this case that the individuals or. subscribers were engaged in the prosecution of a common enterprise, to wit, the business of a mutual insurance company, and had the general purpose and accomplished the same end as a formally incorporated association.”
See also Hecht v. Malley, 265 U. S. 144; Pickering v. Alyea-Nichols Co., 21 Fed. (2d) 501; and Philadelphia & Reading Relief Association, 4 B. T. A. 713, 722.
Plaintiff contends that the contract entered into between the members of the relief department and itself is not a contract of insurance but one of beneficial relief, and cites, in support of this contention, Beck v. Penna. Railroad, 63 N. J. L. 232, as a leading case on the subject, involving a relief department similar to plaintiff’s relief department.
Plaintiff’s brief, in quoting from the above decision in the Beeh case, italicizes the following: “ the contract between them is not of insurance but of beneficial relief.” And also italicizes the following: “not one of insurmice, within the laws appealed to.”
In order to estimate the weight to be given to the Beeh case, we think that there should be applied to it the observation of Chief Justice Marshall in the case of Cohens v. Virginia, 6 Wheat. 399:
*397 “ It is a maxim not to be disregarded that general expressions, in every opinion, are to be taken in connection with the case in which those expressions are used. If they go beyond the case, they may be respected but ought not to control the judgment in a subsequent suit when the very point is presented for decision. The reason of this maxim is obvious. The question actually before the court is investigated with care and considered in its full extent. Other principles which may serve to illustrate it are considered in their relation to the case decided, but their possible bearing on all other cases is seldom completely investigated.”
Also the following from Corpus Juris 15, page 941:
“Accordingly, in applying the rule of stare decisis to a former, decision, the language of the opinion in the earlier case must be construed with reference to the particular facts presented in that case.”
In the Beck case plaintiff Beck sued the railroad company to recover for a personal injury. The regulations governing the relief department of the railroad and the application for membership provided that the acceptance of benefits from the relief fund for injury or death should operate as a release for all claim for damage arising from injury or death.
Plaintiff Beck objected to the introduction of the release in evidence, on the ground that under the laws of New Jersey no contract to indemnify any person against loss by casualty to property or health or life could be made, except by one incorporated for that purpose under the laws of a State or a foreign corporation formed for that purpose, which has complied with the State laws and obtained authority to transact its business in the State.
The trial judge excluded the evidence. The Court of Errors and Appeals reversed the lower court and held the evidence admissible, and in addition to the excerpt from the opinion quoted in plaintiff’s .brief, said:
“ The purpose of the legislation appealed to is to regulate the business of insurance of various kinds by corporations who propose to do such business and who hold themselves out as ready to contract for insurance with any person who applies and agrees to the terms on which they offer to insure. If it be conceded that such business is a proper subject of *398 legislative regulation, it is obvious that such regulations are not to be extended beyond the business intended to be regulated.” (63 N. J. L. 241.)
It is apparent that the New Jersey court held merely that the contract of insurance with Beck was not one of insurance within the meaning of laws of New Jersey prohibiting the execution of such contracts except by corporations authorized for that purpose. The effect of the holding was merely that the contract between Beck and the railroad company did not fall within the regulation of the insurance laws. We can not consider the Beck case applicable in view of the very comprehensive language in section 503 (a), supra, of the act of 1918, which is as follows:
“(a) Life insurance: A tax equivalent to 8 cents on each $100 or fractional part thereof of the amount for which any life is insured under any policy of insurance or other instrument, by whatever name the same is called: * * *.” (Italics ours.)
Whatever may be the pertinency of the Beck case, the comment of the court in Boston & M. R. R. v. United States, 265 Fed. 578, is in point, and equally applicable to State decisions, as well as to State statutes:
“If the principle were once accepted that the express terms of a Federal law imposing a Federal tax may be abridged, or enlarged, by force of local statutes, the General Government, as a result, would be forced to adopt different standards, and differing rules of taxation among the States— varying in accordance with the differing statutes of the various States, though the power to tax for Federal purposes resides with a single entity and emanates from a central and paramount government. And, as a result of such diversity, there would be no uniformity, though governments exercise the essential and necessary power to impose the burdens of taxation under the impulse of the rightful and governing principle involved in the cardinal idea of uniformity.”
Plaintiff’s contract with the employees joining the relief department provided for payments ranging from $250 to $1,250 in case of death. To deny that this was a contract of life insurance under “ any policy of insurance, or other instrument, by whatever name the same is called,” is to deny the obvious meaning of language.
*399 Plaintiff’s contract certainly meets all the requirements of various definitions of a contract of insurance. Premiums were paid for insurance by members of the relief department, by an assignment of their wages, while they were in the employ of the company, if they were on the wage roll, if not by payments in cash, and after their severance of employment with the company, by payment of premiums in cash. In case of death their beneficiaries are paid as stated before.
Mr. Justice Gray, in Commonwealth v. Wetherbee, 105 Mass. 149, defines a contract of insurance as follows:
“A contract of insurance is an agreement by which one party for a consideration, which is usually paid in money, either in one sum or at different times during the continuance of the risk, promises to make a certain payment of money, or the destruction or injury of something in which the other party has an interest. In fire and marine insurance, the thing insured is property; in life or accident insurance, it is the life or the health of a person. All that is requisite to constitute such a contract is the payment of the consideration by the one and the promise of the other to pay the amount of the insurance upon the happening of injury to the subject by the contingency contemplated in the contract.”
Joyce on Insurance, volume 1, section 7, defines life insurance as follows:
“ Life insurance is a contract dependent upon human life, whereby one for a consideration agrees to pay another a certain sum of money upon the happening of a given contingency, or upon the termination of a specified period.”
“A ‘ contract of life insurance ’ is an agreement between insurer and insured whereby the insurer undertakes to pay a certain sum of money to a certain person, who usually is a person other than insured, upon the happening of a particular event, usually the death of insured, in consideration of payment of insured of certain stated premiums.” Baltimore Life Insurance Co. v. Floyd. 5 Boyce (Del.) 201, 91 Atl. 653.
See also Ritter v. Mutual Life Insurance Co., 169 U. S. 139; State v. Alley, 96 Miss. 720, 51 South. 467.
It remains to be seen whether, within the intent and meaning of any of the provisions of section 231 of the *400 revenue act of 1918, plaintiff is exempt from the payment of the taxes imposed.
The following provisions, covering exemptions, are thought to be applicable by plaintiff:
“ Seo. 231. That the following organizations shall be exempt from taxation under this title:
‡ ‡ ‡ ‡ *
“ (3) Fraternal beneficiary societies, orders, or associations, (a) operating under the lodge system or for the exclusive benefit of the members of a fraternity itself operating under the lodge system, and (b) providing for the payment of life, sick, accident, or other benefits to the members of such society, order, or association, or their dependents;
$ ‡ ‡ ‡ ‡
“ (6) Corporations organized and operated exclusively for religious, charitable, scientific, or educational purposes, or for the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private stockholder or individual;
*******
“ (10) Farmers’ or other mutual hail, cyclone, or fire insurance companies, mutual ditch or irrigation companies, mutual or cooperative telephone companies, or like organizations of a purely local character, the income of which consists solely of assessments, dues, and fees collected from members for the sole purpose of meeting expenses.”
It is well to refer here to some of the principles which have guided the courts in determining whether the taxpayer is entitled to exemption.
“ Statutes and provisions exempting persons or property from taxation are strictly construed. * * *
“Legislation which is claimed to relieve any species of property from its due proportion of the general burdens of government should be so clear that there can be neither reasonable doubt nor controversy about its terms.” Sutherland “ Statutory Construction,” section 539.
“ The claim for exemption must be clearly made out. Taxes being the sole means by which the State can maintain its existence, any claim on the part of anyone to exemption from the full payment of his share of taxes on any portion of his property must on that account be clearly defined and founded upon plain language. There must be no doubt or *401 ambiguity in the language upon which the claim is based. It has been said that where there is a well-founded doubt it is fatal to the claim.” Hardware Underwriters et al. v. United States, 65 C. Cls. 267.
This court said in New York Trust Co. v. United States, 63 C. Cls. 102:
“Plaintiff is claiming the benefit of an exemption from taxation, and the burden is upon it to show clearly that it is within the exemption claimed. Phoenix Fire & Marine Insurance Co. v. Tennessee, 161 U. S. 174; Chicago, Burlington & Kansas City R. R. v. Guffey, 120 U. S. 569, 575; and Metcalf & Eddy v. Mitchell, supra.”
The language of the Supreme Court in Bank of Commerce v. Tennessee, 161 U. S. 134, 146, is very pertinent to the case at bar, in determining the applicability to plaintiff of the provisions above cited, from section 231 of the act of 1918:
“ These cases show the principle upon which is founded the rule that a claim for exemption from taxation must be clearly made out. Taxes being the sole means by which sovereignties can maintain their existence, any claim on the part of anyone to be exempt from the full payment of his share of taxes on any portion of his property must on that account be clearly defined and founded upon plain language. There must be no doubt or ambiguity in the language used upon which the claim to the exemption is founded. It has been said that a well-founded doubt is fatal to the claim; no implication will be indulged in for the purpose of construing the language used as giving the claim for exemption where such claim is not founded upon the plain and clearly expressed intention of the taxing power.”
The remarks of the court in Cornell v. Coyne, 192 U. S. 418, 431, are very pertinent both as to the strictness of the rule to which the taxpayer is held who claims a statutory exemption and as a reply to the argument in plaintiff’s brief in the case at bar: “A literal interpretation of this statute, therefore, leads to the illogical conclusion that Congress intended to impose a tax upon the issuance of any kind of insurance policy, but permitted a certain class of persons to issue any kind of insurance policy without being subject to the tax.”
*402 In Cornell v. Coyne the court said :
“ Clearly there is nothing in the body of the act exempting exported filled cheese from the ordinary manufacturing tax on other filled cheese. But if there were a doubt as to the meaning of the statute, that doubt should be resolved in favor of the Government. Whoever claims a privilege fr'om the Government should point to a statute which clearly indicates the purpose to grant the privilege.
“£ But if there be any doubt as to the proper construction of this statute (and we think there is none), then that construction must be adopted which is most advantageous to the interests of the Government. The statute being a grant of a privilege must be construed most strongly in favor of the grantor. Gildart v. Gladstone, 12 East 668, 675; Charles River Bridge v. Warren Bridge, 11 Pet. 420, 544; Dubuque c& Pacific Railroad v. Litchfield, 23 How. 66; The Binghamton Bridge, 3 Wall. 51, 75; Rice v. Railroad Co., 1 Black 360, 380; Leavenworth, Lawrence & Galveston Railroad v. United States, 92 U. S. 733; Fertilizing Co. v. Hyde Park, 97 U. S. 659. Hannibal, &c., Railroad Co. v. Packet Co., 125 U. S. 260, 271.
“ Why Congress should grant an exemption from manufacturing tax in the case of exported tobacco and not in the case of exported filled cheese is not for us to determine. Doubtless the reasons which prompted such difference were satisfactory. It is enough that no exemption has been made in favor of the latter'.”
It is plaintiff’s contention that Congress intended to impose the tax in question only on the issuance of policies by those engaged in the insurance business for profit.
The same contention was made in Bankers' & Planters' Mut. Ins. Ass'n v. Walker, 279 Fed. 53, involving the identical provisions under the revenue act of 1917, but the Circuit Court of Appeals held:
“ This contention is unsound, because this is a purely life insurance arrangement and business, and section 504 does not require profits or dividends as a prerequisite to this,tax.”
Plaintiff’s “ relief department ” possesses none of the in-dicia of a fraternal beneficiary society, order, or association, operating under the lodge system, to bring it within the provisions of (3), section 231, supra.
We think that article 514 of Regulations 45 of the Treasury Department, under the revenue act of 1918, properly *403 defines “ fraternal beneficiary societies operating under the lodge system ” as they are ordinarily understood:
“Fraternal beneficiary societies: A fraternal beneficiary society is exempt from tax only if operated under the £ lodge system,’ or for the exclusive benefit of the members of a society so operating. ‘ Operating under the lodge system ’ means carrying on its activities under a form of organization that comprises local branches, chartered by a parent organization and largely self-governing, called lodges, chapters, or the like. In order to be exempt it is also necessary that the society have an established system for the payment to its members or their dependents of life, sick, accident, or other benefits.”
The decision of the Board of Tax Appeals, where a similar claim for exemption was made, is in point:
“In dealing with cases coming under section 231 of the revenue act of 1918, the character of the organization must be judged by its articles of incorporation, constitution, and by-laws, or by what other instrument it is governed. Corley v. Travelers' Protective Association, supra; Berry v. Knights Templars' & Masons' Life Indemnity Co., supra. Search the petitioner’s governing regulations as we may (it is the only instrument which has been offered to us), we are unable to discover, even in a remote degree, a single fraternalistic feature in its organization. It is entirely without any social features. Its membership is made up of individuals whose vocations are as numerous and diverse as the classifications of employment of a great railway system; the section hand, the freight hustler, the brakeman, the conductor in charge of a fast transcontinental train, the locomotive engineer, the train dispatcher1, the clerk in the office, all are entitled to membership in the association for the mere asking, expressed in written application, provided no disability exists; and yet none of these look to the petitioner for any betterment in social and laboring conditions. ' There is no fraternal object which moves them to seek membership in the association, but rather the motive is mercenary. The petitioner has neither lodges, rituals, ceremonial, or regalia; and it owes no allegiance to any other authority or jurisdiction. It is not a ‘ fraternal beneficiary association ’ operating under the lodge system, within the meaning of section 231 (3) of the revenue act of 1918, and therefore is not entitled to exemption under the provisions of that section.” Appeal of Philadelphia & Reading Relief Association, 4 B. T. A. 713, 726.
*404 It is equally clear that plaintiff can not escape the tax under (6), section 231, supra), which exempts religious, charitable, scientific, and educational organizations. Obviously, plaintiff does not come within any of these four classes. Nor can we see how plaintiff falls within the exemptions of (10), section 231, aside from any question as to whether plaintiff’s “ relief department,” operating in six different States, may be considered an organization of a “purely local character.”
(10) provides for exemptions for—
“ Farmers’ or other mutual hail, cyclone, or fire insurance companies, mutual ditch or irrigation companies, mutual or cooperative telephone companies, or like organizations of a purely local character, the income of which consists solely of assessments, dues, and fees collected from members for the sole purpose of meeting expenses.”
It could not be contended, with any degree of plausibility, that farmers’ organizations, other than those operated under the lodge system, could be exempt from the life-insurance tax under section 231, and certainly not under (10); for under that subdivision the farmers’ organizations are granted an exemption for hail, cyclone, and fire insurance.
Under the principle of expressio unius est exclusio alte-rius, exemption for farmers’ organizations could not be extended to life insurance under (10). Then, how can it be successfully urged that life-insurance tax exemption is extended to the “ like organizations ” referred to in (10) ?
It will be recalled, as above stated, that when the bill which became the act of 1917 was reported to the House it contained a specific provision exempting “ farmers’ purely cooperative company or association or employees’ relief associations operated on the * * * local cooperative plan * * * ?5
This provision was stricken from the bill, and, in lieu thereof, that which is substantially section 231 of the act of 1918 was inserted. We do not find any life-insurance tax exemption left in section 231 for farmers’ organizations operating on the local cooperative plan, as distinguished from those operating under the lodge system, for (10) con *405 fines the farmers’ exemptions to mutual hail, cyclone, and fire insurance companies. It would, indeed, be singular to read into (10) a life-insurance tax exemption extended to employees’ relief associations and not to the farmers’ companies.
In Neal v. Clark, 95 U. S. 708, the court says:
“ It is a familiar rule in the interpretation of written instruments and statutes that £ a passage will be best interpreted by reference to that which precedes and follows it.’ So, also, ‘ the meaning of a word may be ascertained by reference to the meaning of words associated with it.’ ”
The court further quotes from Broom’s Legal Maxims:
“ In the construction of statutes, likewise, the rule noscitur a sociis is very frequently applied; the meaning of a word, and consequently the intention of the legislature, being ascertained by reference to the context, and by considering whether the word in question and the surrounding words are, in fact, ejusdem, generis, and referable to the same subject matter.”
“ It is a familiar rule in the construction of terms to apply to them the meaning naturally attaching to them from their context. NosdPwr a sociis is a rule of construction applicable to all written instruments. Where any particular word is obscure or of doubtful meaning, taken by itself, its obscurity or doubt may be removed by reference to associated words. And the meaning of a term may be enlarged or restrained by reference to the object of the whole clause in which it is used.” Virginia v. Tennessee, 148 U. S. 519.
“ It would ignore the fact that the meaning of words is affected by their context and violate the settled rule that words which standing alone might have a wide and comprehensive import will, when joined with those defining specific acts, be interpreted in their narrower sense and understood to refer to things of the same nature as those described in the associated list, enumeration, or class. Cf. Virginia v. Tennessee, 148 U. S. 503, 519; United States v. Chase, 135 U. S. 255, 258; Neal v. Clark, 95 U. S. 704, 708.” United States v. Salen, 235 U. S. 249.
In Bankers’ & Planters' Mut. Ins. Ass'n v. Walker, 279 Fed. 53, passing on the identical provision in the revenue act of 1917, the court held that Congress did not intend to include life insurance in the expression “ like associations.” The court said:
*406 “ It is also evident that plaintiff does not come within the ‘ like organization of a purely local character, the income of which consists solely of assessments, dues, and fees collected from members for the sole purpose of meeting its expenses ’ as set out in subdivision ‘ tenth ’ of section 11a, above quoted. This is not a ‘ purely local ’ organization; its income is not collected for the mere purpose of ‘ meeting its expenses,’ but goes much beyond this and covers insurance payments; and it is not a ‘like organization,’ such organizations being ‘ farmers ’ or other mutual hail, cyclone, or fire insurance company, mutual ditch or irrigation company, mutual or cooperative telephone company.’ Life insurance is too well known and important for us to suppose that Congress would detail hail, cyclone, and fire insurance, and intend life insurance to be included in the general expression of ‘ like associations.’ The plaintiff is clearly liable to the tax.”
Our view that (10) of section 231 of the act of 1918 did not include life insurance is strengthened by the fact that when said section 231 was reenacted in the revenue act of 1924, 43 Stat. 282, life insurance was added to the provisions of (10) as follows:
“(10) Benevolent life-insurance associations of a purely local character,, farmers’ or other .mutual hail, cyclone, casualty, or fire insurance companies, mutual ditch or irrigation companies, mutual or cooperative telephone companies, or like organizations; but only if 85 per centum or more of the income consists of amounts collected from members for the sole purpose of meeting losses and expenses.
“ It is an accepted principle that for purposes of statutory construction, within certain limits, resort may be had to subsequent statutes.” Douglas v. Edwards, 298 Fed. 229, 238. Citing, with other cases, Smietanka v. First Trust & Savgs. Bank, 257 U. S. 602, and Shwab v. Doyle, 258 U. S. 529.
In the Smietanka case, supra, Mr. Chief Justice Taft said:
“ It is obvious that, in the acts subsequent to that of 1913, Congress sought to make specific provision for the casus omissus in the earlier act.
“ The case is not unlike that of United States v. Field, 255 U. S. 257. The revenue act of 1916 imposed a tax on the estate of a decedent at the time of his death. The Government sought to tax property passing under a decedent’s testamentary execution of a general power of appointment. It was held that, while in equity, property passing^ under *407 such a power might be treated as assets of the donee for the use of his creditors if executed in favor of a volunteer, it was not subject to distribution as part of the estate of the donee and was not taxable. In the later act such property was expressly included. This was thought by the court to show at least a legislative doubt whether the earlier act included such property.”
In Shwab v. Doyle, supra, the Supreme Court said:
“ In the revenue act of 1918, 40 Stat. 1097, it reenacted section 202 of the act of September 8, 1916, and provided that the transfer or trust should be taxed whether ‘made or created before or after the passage of ’ the act. And we can not accept the explanation that this was an elucidation' of the act of 1916, and not an addition to it, as averred by defendant, but regard the act of 1918 rather as a declaration of a new purpose, not the explanation of an old one.”
We are of the opinion that plaintiff’s petition should be denied. Petition will be dismissed. It is so ordered and adjudged.
GreeN, Judge; Moss, Judge; Graham, Judge; and Booth, Chief Justice, concur.