Graham, Judge,
delivered the opinion of the court:
Plaintiff and his wife entered into a lease with the Tex-homa Oil and Helming Company and J. J. Perkins, dated January 10, 1923, by which they leased certain land owned by them in the State of..Texas'“ for the sole and only purpose of mining and operating for oil and gas and laying pipe lines and building tanks, towers, stations, and structures thereon to produce, save, and take care of said products.” As consideration for this lease they were to receive $101,815.00, of which $38,815.00 was to be in cash, and a promissory note for $38,000.00, the balance of $25,000 to be paid out of twenty-ñve per cent of seven-eighths of the oil produced and saved from the leased lands.
During the year 1923 the plaintiff and his wife received from this lease the total of these two sums — namely, $76,815.00 — in cash. In making his income-tax return for the year 1923 plaintiff reported one-half of said sum— namely, $38,407.50 — as taxable income from the sale of capital assets, and computed and paid a tax of 12% per cent in accordance with section 206 (a)[1] of the revenue act *640 of 1921, 42 Stat. 232, 233. The Commissioner of Internal Revenue thereafter, upon a reaudit of plaintiff’s return and books, found and assessed a deficiency tax of $6,092.48, upon the ground that the said amount received under the lease was ordinary income under sections 210 and 211 of said act of 1921. On October 10,1921, plaintiff filed a claim for refund, which was rejected by the commissioner in so far as the additional sum of $6,092.48 was concerned.
The sum paid by plaintiff for which a refund is sought is $7,223.38, being the said amount of $6,092.48 with interest, amounting to $1,130.90. If the plaintiff is not entitled to the refund of the principal sum, he is not entitled to the interest.
The one question involved is whether the income received by the plaintiff from said lease is taxable as income from the sale of capital assets or is ordinary income. If it is from the sale of capital assets the plaintiff is entitled to a refund; if it is not, he is not so entitled. Since the decision in Stratton’s Independence v. Howbert, 231 U. S. 399, following through Stanton v. Baltic Mining Co., 240 U. S. 103; Von Baumbach v. Sargent Land Co., 242 U. S. 503; United States v. Biwabik Mining Co., 247 U. S. 116, it has been consistently held that the proceeds received from such leases of oil and mineral lands were to be treated as gross income. The principle is too well established to require extended discussion.
The Board of Tax Appeals, beginning with the case of Nelson Land & Oil Co., 3 B. T. A. 315, and following down through a number of decisions, has uniformly held that sums received as bonus or royalties from such leases of oil and mineral rights were not income from the sale or exchange *641 of capital assets but gross income. We hold it to be gross income.
The further contention of the plaintiff was that because the Supreme Court of Texas has held that a lease such as in this case is real estate, the proceeds and the royalty and bonus paid were real property, and consequently capital assets and not ordinary income. As stated, it would be sufficient to say that the contrary doctrine, that such leases are not real estate, has been indorsed by the Supreme Court of the United States and by most of the States of the Union, including Arkansas, Oklahoma, Pennsylvania, Illinois, West Virginia, and Virginia. Only several States are in .accord with the Texas court; so that, aside from the fact that the weight of authority is against the holding of the Texas court, we see that the difference between the holdings of the courts amounts only to a question as to the proper application to a given state of facts of the lex loci rei sitce doctrine, which is merely a principle of general jurisprudence grounded in reason and good sense, and has existed in nearly all civilized countries since the days of the Homan law. It was accepted as a principle of the common law and early recognized by the Supreme Court in the opinion of Justice Story in United States v. Crosby, 7 Cranch 115. Its application to the different facts and varying circumstances of cases has given rise to a large body of litigation. To say that the holding of the Supreme Court of Texas on the application of this principle to a given state of facts is sufficient to control the United States courts in the construction of the United States revenue act in the face of the contrary application of the principle by the United States courts is too untenable to require discussion. See Olcott v. Supervisors, 16 Wall. 678, 690. And while it has been the practice of the United States courts to follow the decisions of the State courts generally, in matters concerning the transfer, alienation, and descent of real estate, the construction of wills, and other conveyances as between individuals, the State decisions can not control on a question of general jurisprudence as in this case. See Burgess v. Seligman, 107 U. S. 20, 33; Hines Trustees v. Martin, 268 *642 U. S. 458, 463; and B. & W. Taxicab Co. v. B. & Y. Taxicab Co., 276 U. S. 518, 529.
This court has held in the case of Steedman v. United States, 63 C. Cls. 226 (writ of certiorari denied), that the decision of the Supreme Court of Missouri that real estate could not be sold for the payment of administration expenses did not exempt real estate from taxation under a Federal statute; and in the Aldridge case, 64 C. Cls. 424, it was held that where the courts of Mississippi held that an administrator could not waive the statute which was running in favor of the estate and against a creditor of the estate, such decision did not prevent an executrix from waiving the statute which was running in favor of the United States in the matter of the adjustment and collection of an overassessment and refund, for the reason that this right was given by the revenue statute and could not be affected by a decision of a State court. See also Burk-Waggoner Oil Assn. v. Hopkins, 269 U. S. 110, 114; Nyberg, Admr., v. United States, 66 C. Cls. 153; and Atlantic Coast Line R. R. v. United States, 66 C. Cls. 378.
The Federal Government is not limited in its selection of subjects for taxation by the construction of the State courts as to the property rights of individuals, provided the subject taxed was primarily a proper subject for taxation by the United States Government. Congress in passing a revenue act does not, and is not called upon to suit the revenue system of the country to the varying and conflicting decisions and laws of the different States. A revenue act is an act of Congress passed in the exercise of its constitutional right, and therefore the supreme law of the land, and where the constitutional powers of the Federal Government and the States conflict those of the States must give way.
The petition should be dismissed, and it is so ordered.
SiNNOtt, Judge; GreeN, Judge; Moss, Judge; and Booth, Chief Justice, concur.

 Sec. 206. (a) That for the purpose of this title:
(1) The term “capital gain” means taxable gain from the sale or exchange of capital assets consummated after December 81, 1921;
* * * * * * *
(6) The term “capital assets” as used in this section means property acquired and held by the taxpayer fox- profit or investment for more than two years (whether or not connected with his trade or business), but does not include property held for the personal use or consumption of the taxpayer or his family, or stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year.
*640 (b) In the case of any taxpayer (other than a corporation) who for any taxable year derives a capital net gain, there shall (at the election of the taxpayer) be levied, collected, and paid, in lieu of the taxes imposed by sections 210 and 211 of this title a tax determined as follows :
A partial tax shall first be computed upon the basis of the ordinary net income at the rates and in the manner provided in sections 210 and 211, and the total tax shall be this amount plus 12% per centum of the capital net gain ; but if the taxpayer elects to be taxed under this section the total tax shall in no such case be less than 12% per centum of the total net income. The total tax thus determined shall be computed, collected, and paid in the same manner, at the same time, and subject to the same provisions of law, including penalties, as other taxes under this title.