### NEW YORK, N. H. & H. R. CO. v. UNITED STATES.

(Circuit Court of Appeals, Second Circuit. November 11, 1920.)

No. 30.

1. **Internal revenue ☞9—Corporation tax; "paid-up capital stock" does not include premium received above par value.**

   In Corporation Excise Tax Act, § 38(2), authorizing corporation to deduct from gross income interest paid within the year on indebtedness not exceeding its paid-up capital stock outstanding at the close of the year, "paid-up capital stock" means its outstanding capital stock at par value, plus any amount received as partial payment for stock not yet issued, and does not include any premium it may have received for stock sold above par value.

   [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Paid Up.]

2. **Constitutional law ☞229(3)—Equal protection of laws not denied by tax on corporations depending on method of issuance of stock.**

   The provision of the Fourteenth Amendment, which entitles all persons to equal protection of the laws, as applied to taxation, only requires that a statute shall operate on all alike under the same circumstances, and a statute imposing a tax on corporations is not invalid because the tax is greater on one corporation than another, owing to the difference in the methods of issuing their stock.

In Error to the District Court of the United States for the District of Connecticut.

Action by the United States against the New York, New Haven & Hartford Railroad Company. Judgment for the United States, and defendant brings error. Affirmed.

For opinion below, see 265 Fed. 331.

This suit is brought by the government to recover for excise taxes for the taxable years ending December 31, 1909, 1910, 1911, and 1912. The taxes were levied pursuant to section 38 of the act of Congress approved August 5, 1909 (36 Stat. 112).

The plaintiff in error is a railroad corporation organized and existing under the laws of the state of Connecticut and commonwealth of Massachusetts. In 1889 the Legislature of the state of Connecticut authorized the plaintiff in error to increase its capital stock, with a proviso that no stock should be issued for less than $100 per share. It is provided by the general laws of the state of Connecticut that the capital stock should be issued in such a manner as might be provided by the Railroad Commission of that state. Title 26, § 3664, Rev. 1902. The capital stock was issued at the par value of $100 per share, but a very considerable number of shares were issued to stockholders for sums in excess of $100 per share. These shares were sold to the public generally and stockholders who subscribed. The prices at which they were sold varied from $144 to $58 per share. The moneys were paid into the treasury of the company; the purchaser not receiving a stock certificate until the full amount thereof, as subscribed, was paid to the corporation. Some were paid for in installments, and, in the interim, negotiable part-paid receipts were issued for the sums as paid.

In four counts, the complaint alleged amounts were received by the plaintiff in error over and above the price of $100 per share in the years mentioned, and it is upon the basis of these total sums that the government claims the plaintiff in error wrongfully deducted from its full tax (in making up its tax returns) interest, as actually paid within the year, on its bonded or other indebtedness, claiming the premium paid constituted part of the paid-up capital stock. Prior to July 1, 1909, which was the date on which the first uniform rules of accounting issued by the Interstate Commerce Commission became effective, no uniform method of accounting was followed by the railroad corporations relative to setting up or disposing of the excess amount over the par value received from sales of their capital stock.

The regulations of the Interstate Commerce Commission required that after July 1, 1909, all sums received by steam railroads in excess of $100 a share for capital stock should be set forth in a "premium account." This the plaintiff in error did. Its profit and loss account disclosed the amounts paid in excess of $100 per share prior to such date. The plaintiff in error claimed the right of deducting for interest actually paid within the year to the full extent of this sum.

H. J. Hart, of Bangor, Me., and W. W. Meyer, of New Haven, Conn., for plaintiff in error.

Edward L. Smith, U. S. Atty., and Allan K. Smith, Asst. U. S. Atty., both of Hartford, Conn.

Before WARD, HOUGH, and MANTON, Circuit Judges.

MANTON, Circuit Judge (after stating the facts as above).    [1] By an act of Congress approved August 5, 1919, it was provided:

"That every corporation * * * organized for profit and having a capital stock represented by shares * * * shall be subject to pay annually a special excise tax with respect to the carrying on or doing business by such corporation * * * equivalent to one per centum upon the entire net income over and above five thousand dollars received by it from all sources during such year," * * * and that "such net income shall be ascertained

by deducting from the gross amount of the income of such corporation, * * * received within the year from all sources, * * * (3) interest actually paid within the year on its bonded or other indebtedness to an amount of such bonded and other indebtedness not exceeding the paid-up capital stock of such corporation, * * * outstanding at the close of the year."

The question presented is: What did Congress intend by the phrase "paid-up capital stock outstanding at the close of the year"? The plaintiff in error contends Congress intended to include as part of the paid-up capital stock all the moneys paid by the stockholders for their stock, including the sums paid in excess of $100 per share. The defendant in error claims the term "paid-up capital stock" refers to the total par value; that is, $100 for each share. The plaintiff in error treated the surplus above $100 as a premium paid for; before 1909, in its books, it was accounted for in its "profit and loss account." After that, it was treated as in its "premium account." The excess paid in price is, in fact, a premium paid for the stock; for when such shares of stock are at face value, they are at par, and when more is paid, they are above par or at a premium. The total of the par value has always been considered capital stock. The term "capital stock" has thus been used, not only in banking and commerce, but in the corporation acts in the several states. Full force and effect must be given to the term "paid-up" as used in the statute, and its use in connection with "not exceeding." We think the employment of these words made the intention of Congress clear as obviously meaning paid up to par value, and not exceeding that. The premiums received were used, in carrying on the business of the corporation, as if surplus. The Circuit Court of Appeals for the First Circuit has recently had the same question presented, and approved the reasoning and conclusion of the District Judge below. B. & M. R. R. v. U. S. (C. C. A.) 265 Fed. 578. opinion below U. S. v. N. Y. N. H. & H. R. R. Co. (D. C.) 265 Fed. 331.

[2] But it is argued, on this writ of error, that the interpretation placed upon the provisions of the Excise Tax Law is in violation of the Fourteenth Amendment of the Constitution of the United States, in that it denies to the plaintiff in error equal protection of the law; the contention being that the interpretation results in gross discrimination as between corporations of the same class and engaged in the same kind of business. It results, it is claimed, in unequal and ununiform taxation as between similar corporations merely because of the manner in which such corporations may have issued to them their shares of capital stock, even though such corporations may have received identically the same amounts of money from their shareholders and are engaged in identically the same kind of business.

It is said that under this ruling a corporation in the same kind of business, which has stated its par value of stock as $100 per share, but issues 10,000 shares at $150 per share, or for a total of $1,500,000, can, under this interpretation, deduct from its gross income interest on an indebtedness of but $1,000,000, whereas a competitor in the same business and locality, without par value, and which has received

from its stockholders for 10,000 shares a total of $1,500,000, can deduct interest on an indebtedness of $1,500,000, or on 50 per cent. more of its indebtedness than its competing corporation; and it is further contended that if a third corporation has stated $200 per share as the par value of its stock, and has issued part-paid stock certificates for 10,000 shares at $150 each, it will have received from its stockholders $1,500,000, or on 50 per cent. more indebtedness than the first competitor named. Thus the contention is advanced that the difference in the detail and issuing stock results in substantially greater tax burden on one corporation than on a competing corporation engaged in the same business.

There must be no discrimination of one as against the other in the same class, and the method for the assessment and collection of taxes must be consistent with natural justice. Mich. Central v. Powers, 201 U. S. 245, 26 Sup. Ct. 459, 50 L. Ed. 744. The quality and uniformity in taxation means only that the same means and methods of taxation shall be applied. It does not require that it shall operate uniformly on everybody. The purpose is to secure geographical uniformity. Kentucky Tax Cases, 115 U. S. 337, 6 Sup. Ct. 57, 29 L. Ed. 414. Assuming that Congress had the power to enact a corporation excise tax, it could, if it so desired, allow deductions from the gross amount of the income of any corporation when an excise tax was being laid, the mode of accomplishing this under the statute is due process of law. That being so, the provisions as to securing equal protection of the laws is not violated by any diversity in the jurisdiction. All the persons within the territorial limits of the operation of the law have equal right, in like cases and under like circumstances, to resort to them for redress. The fact that there exist so many inequalities due to the method employed by the particular incorporation did not invalidate the act. Giozza v. Tiernan, 148 U. S. 657, 13 Sup. Ct. 721, 37 L. Ed. 599.

Congress may impose different specific taxes upon different trades and professions and vary the rates of excises upon various products. It may tax real estate and personal property in a different manner. It may tax visible property only and not tax securities for payment of money. It may allow deductions for indebtedness or not allow them. Such regulations of this character, so long as they proceed within reasonable limits and general usage, are within the discretion of Congress. There is no precise application of the rule of reasonableness of classification, and the rule of equality permits of many practical inequalities. The rule of equality under the Constitution only requires that the law imposing it shall operate on all alike under the same circumstances. The differences here permitting deductions are not arbitrary, because it is determined by an established value, namely, the par value of the capital stock.

We are of the opinion that the act of Congress has been properly interpreted and applied by the court below.

The judgment is affirmed.