**PHIPPS v. BOWERS, Collector of Internal Revenue (three cases).**

**MARTIN v. SAME.**

District Court, S. D. New York.

Dec. 2, 1930.

C. Bascom Slemp and Louis Titus, both of Washington, D. C., and Geo. V. Triplett, Jr., and Wilder Goodwin, both of New York City, for plaintiffs.

Charles H. Tuttle, U. S. Atty., and Samuel C. Coleman, Asst. U. S. Atty., both of New York City, for defendant.

GODDARD, District Judge.

The defendant has moved to dismiss the complaints in each of the above-entitled actions on the ground that they respectively failed to state facts sufficient to constitute a cause of action. The allegations set forth in the several complaints are similar in their general facts, although the amounts involved vary, and the questions presented are alike, so that the consideration of the facts in one case is sufficient and the determination of one case applies to them all.

During the year 1919 the plaintiff purchased but not as an original subscriber $4,000,000 par value of United States 3¾

166

per cent. Victory notes which had been issued by the Secretary of the Treasury pursuant to the Victory Liberty Loan Act, approved March 3, 1919 (31 USCA § 749 et seq.). In January, 1920, the plaintiff purchased, also in the open market, $300,000 more of these notes. The plaintiff at the time of the purchases borrowed large sums of money for the purpose of buying them. During 1921, the plaintiff sold some of the notes, but at the end of 1921 still had $2,000,000 par value of these Victory notes, during which year he borrowed money for the purpose of carrying them. During the calendar year 1921, plaintiff paid interest in the amount of $162,146.-72 upon the money which he had borrowed—$157,420.45 having been paid by the plaintiff prior to November 23, 1921—the date of the passage of the Revenue Act of 1921 (42 Stat. 227). Plaintiff's income for the year 1921 as fixed by the Treasury Department was $212,-461.67, and no deduction was made from his income for that year on any of the interest paid by him on the money borrowed for the purpose of carrying the Victory notes. Had this interest been deducted, his income would have been reduced to $50,314.95 for the year 1921, and his tax would have amounted to $4,330.07 for that year. Plaintiff paid income tax for 1921 of $94,625.49, and in 1923 filed a claim for a refund based upon the contention that he should have been allowed to have deducted such interest. Thereafter the claim for the refund was rejected by the government, and in December, 1929, this suit was brought to recover the sum of $91,087.-63, that being the amount of the tax claimed by the plaintiff to have been paid in excess of the amount of tax due.

By the terms upon the face of the Victory notes, they were "(1) exempt, both as to principal and interest from all taxation (except estate or inheritance taxes) now or hereafter imposed by the United States, any State or any of the possessions of the United States, or by any local taxing authority."

At the time of the purchases of the notes, the law permitted the plaintiff to deduct from his gross income the interest paid by him upon the money borrowed to purchase the notes; this privilege was conferred by section 214 of the Revenue Act of 1918 (40 Stat. 1066). The pertinent part of this section reads as follows:

"(a) That in computing net income there shall be allowed as deductions: * * *

"(2) All interest paid or accrued within the taxable year on indebtedness, except on indebtedness incurred or continued to purchase or carry obligations or securities (other than obligations of the United States issued after September 24, 1917), the interest upon which is wholly exempt from taxation under this title. * * *"

On November 23, 1921, the Revenue Act of that year was passed and changed the above-mentioned provision of the act of 1918 so that it read as follows:

"(a) That in computing net income there shall be allowed as deductions: * * *

"(2) All interest paid or accrued within the taxable year on indebtedness, except on indebtedness incurred or continued to purchase or carry obligations or securities (other than obligations of the United States issued after September 24, 1917, and originally subscribed for by the taxpayer) the interest upon which is wholly exempt from taxation under this title." Section 214, 42 Stat. 239. (The words which I have italicized, "and originally subscribed for by the taxpayer," is the new part.)

This amendment limited the privilege of deducting interest paid on the money borrowed for the purpose of purchasing or carrying obligations of the United States to original subscribers who borrowed money for such purpose.

The 1921 act provides that title 2, which defines "gross income" and "net income," grants deductions and credits shall take effect as of January 1, 1921. Section 1400(a) and section 263 (42 Stat. 271, 320).

The plaintiff makes three contentions:

First. That that part of section 214 of the Revenue Act of 1918 and also the Revenue Act of 1921, which provides that interest on indebtedness incurred or continued to purchase or carry tax-exempt securities cannot be deducted from income, is unconstitutional and therefore void.

Second. That in so far as that portion of section 214 of the Revenue Act of 1921 is intended to be retroactive as of January 1 of that year, and thus effect transactions which had happened prior to the passage of the act, it is unconstitutional and therefore void.

Third. That section 214 of the Revenue Act of 1921, which limits the right to deduct interest on indebtedness incurred for purchasing or carrying tax-exempt United States obligations to the original subscriber, therefore is not retroactive, but was intended to-

take effect only upon the passage of the act and not to affect prior transactions.

The following discussion by Senator Trammell indicates what Congress apparently had in mind in limiting the deduction allowed to interest paid on money borrowed to buy government bonds to original subscribers:

"Certainly the Government held out no pledge to the speculators who had been purchasing Government bonds at ridiculously low prices; that if they went into the market and purchased the bonds at $83, $84, or $85, the Government would exempt the interest on all the money borrowed for that purpose. I submit that if we feel that there is a moral obligation—and of course—there is no legal obligation—to remit the interest to those patriotic citizens who borrowed money for the purpose of purchasing bonds during the War, that obligation does not extend to speculators in bonds who borrowed money for that purpose." Congressional Record, supra, p. 7506.

"The amendment offered by me is intended for the purpose of restricting this deduction to patriotic citizens who borrowed money for the purpose of purchasing Government securities during the War." Congressional Record, supra, p. 7351.

 That it is within the power of Congress to determine what deductions, if any, may be taken from gross income in arriving at net income, is not open to question unless the result be undue discrimination. "It [Congress] may allow deductions for indebtedness or not allow them. * * * The rule of equality under the Constitution only requires that the law imposing it shall operate on all alike under the same circumstances." N. Y., N. H. & H. R. R. Co. v. United States (C. C. A.) 269 F. 907, page 910. See, also, Mich. Central v. Powers, 201 U. S. 245, 26 S. Ct. 459, 50 L. Ed. 744; Anderson v. Forty-Two Broadway Co., 239 U. S. 69, 36 S. Ct. 17, 60 L. Ed. 152. And the fact that, under several successive Revenue Acts, Congress has permitted certain deductions for interest paid on money borrowed does not, it seems to me, deprive Congress of the power to withdraw that privilege. Congress may determine under what circumstances interest may be deducted and when it may not be deducted. Here classification is not discrimination. It may make such classifications as in its judgment are advisable. And where a reason exists for such classification, it is not for the courts to pass upon the merits of the classi-

fication. In Flint v. Stone Tracy Co., 220 U. S. 107, 31 S. Ct. 342, 358, 55 L. Ed. 389, Ann. Cas. 1912B, 1312, where the constitutionality of the 1909 corporation excise tax measured by income was under consideration, and where it appeared that only two classes of corporations—banks and trust companies—were allowed to deduct interest only on indebtedness of a special nature, namely deposits, while other corporations might deduct only a limited amount of the interest paid upon their bonded or other indebtedness, Mr. Justice Day said: "Again, it is urged that Congress exceeded its power in permitting a deduction to be made of interest payments only in case of interest paid by banks and trust companies on deposits, and interest actually paid within the year on its bonded or other indebtedness to an amount of such bonded and other indebtedness not exceeding the paid-up capital stock of the corporation or company. This provision may have been inserted with a view to prevent corporations from issuing a large amount of bonds in excess of the paid-up capital stock, and thereby distributing profits so as to avoid the tax. In any event, we see no reason why this method of ascertaining the deductions allowed should invalidate the act. Such details are not wholly arbitrary, and were deemed essential to practical operation. Courts cannot substitute their judgment for that of the legislature. In such matters a wide range of discretion is allowed."

In Brushaber v. Union Pacific Railroad Company, 240 U. S. 1, 36 S. Ct. 236, 243, 60 L. Ed. 493, L. R. A. 1917D, 414, Ann. Cas. 1917B, 713, the court rejected the contention that the Income Tax Act under the Sixteenth Amendment to the Constitution was invalid because: "The provision limiting the amount of interest paid which may be deducted from gross income of corporations for the purpose of fixing the taxable income to interest on indebtedness not exceeding one half the sum of bonded indebtedness and paid-up capital stock is also charged to be wanting in due process because discriminating between different classes of corporations and individuals."

 In the light of the decisions discussing discrimination and the power of Congress to classify, it seems to me that section 214 is not invalid, because it allows the original subscribers to Liberty bonds to deduct interest paid on money borrowed to buy or carry the bonds, and does not give this privilege to those who were not original subscribers.

Another question which arises is whether Congress, in not extending the privilege of deducting from their gross income interest paid by them on money borrowed to buy or carry such bonds, has so reduced or taxed the interest derived from the tax-exempt bonds as to exceed its power. Not only was the effect under such circumstances upon the Victory notes resulting in a lower net return on them quite remote, but the only assurance given to the purchasers of Victory notes in 1919 and 1920 was that, upon the face of the notes that the income would be tax exempt, nothing was stated on the notes about deducting from gross income interest paid upon money borrowed in connection with their purchase. The deduction of interest paid in connection with their purchase was mentioned for the first time in the 1918 Act passed in 1919. The permission of deducting such interest was a privilege or bounty granted by Congress. This privilege was not irrevocable. It was like the rate of tax or a classification subject to change by Congress. It was a privilege which might be rescinded or modified. This was a risk which those who borrowed money and bought Victory notes at reduced price took. Undoubtedly it would be conceded that, if no deductions were allowed for interest paid on money borrowed, the plaintiff would have no cause for complaint, so that the basis of the plaintiff's grievance is that this privilege is given to some other classes but not to their class.

If it is to be held illegal discrimination and to deprive buyers of Victory notes of the benefit of the exemption on the income from the notes because they are not given the privilege of deduction while another class is allowed the privilege, it would seem to logically follow that many, if not all, deductions or privileges granted to taxpayers must include holders of Victory notes; otherwise, they would be regarded as discriminated against, and the amount of their exempt income impaired. Provisions for tax exemptions—constitutional or contractual—are to be strictly construed. Millsaps College v. City of Jackson, 275 U. S. 129, 48 S. Ct. 94, 72 L. Ed. 196; Wilmington & Weldon R. R. v. Alsbrook, 146 U. S. 279, 13 S. Ct. 72, 36 L. Ed. 972; Tucker v. Ferguson, 89 U. S. (22 Wall.) 527, 575, 22 L. Ed. 805. However, Congress may, in its discretion, grant the privilege to certain classes so long as Congress does not act arbitrarily and deems it essential to the practical operation of the statute. Moreover, it seems to me that the refusal to allow a holder of Victory notes to deduct from his gross income interest paid on money borrowed to buy them too remotely effects the exempt income to be regarded as invalid. I do not think that this section is discriminatory in a legal sense. A clear distinction exists between adding a burden and not including a taxpayer in a privilege granted to another class.

Plaintiff relied largely upon two cases as authority supporting his contention that the part of section 214 which provides that interest on indebtedness incurred or continued to purchase or to carry tax-exempt federal securities may not be deducted from income is unconstitutional. These cases are National Life Insurance Company v. United States, 277 U. S. 508, 48 S. Ct. 591, 72 L. Ed. 968; Nauts v. Slayton (C. C. A.) 36 F. (2d) 145, certiorari granted 281 U. S. 712, 50 S. Ct. 350, 74 L. Ed. 1133. The National Life Insurance Company Case involved the method of measuring and taxing the income of life insurance companies. The method applied to them differed from that method applied to other corporations. To quote from the opinion in the case (page 518 of 277 U. S., 48 S. Ct. 591, 592): "In 1921, departing from previous plans Congress laid a tax on life insurance companies based upon the sum of all interests and dividends and rents received, less certain specified deductions: (1) Interest derived from tax-exempt securities, if any; (2) a sum equal to 4 per centum of the company's legal reserve diminished by the amount of the interest described in paragraph (1); (3) other miscellaneous items—seven—not presently important."

Section 213 of the act (42 Stat. 238) excluded from gross income interest upon obligations of a state or of the United States. There was no difference of opinion with respect to item (1) as summarized by the court. Exemption was given to insurance companies under section 245(a)(1) which incorporated section 213(b)(4)—the specific warrant for exception of such income generally. As to item (2), section 245(a)(2), the contention of the insurance companies was that, in measuring income, Congress could not discriminate between companies holding no tax-exempt securities and those holding such securities. If the income from such securities were altogether exempt from tax, Congress could not make the exemption valueless. The court upheld the contention as regards obligations of the states on the ground that income from such securities was

exempt under the Constitution, and that Congress must give full effect to the exemption in so far as obligations of the United States were concerned, and the court stated not that Congress did not have power to do as it did, but that the court was not considering that question. It held merely that, in view of the other provisions of the statute (section 213) which expressly eliminated any purpose of taxing interest upon obligations of the United States, the court could not assume that Congress intended to refuse to permit the deduction of income from United States securities in determining the amount of the legal reserves. The court referred to section 1403,[1] indicating that it was not deciding that section 245(a)(2) was unconstitutional, but that it was holding it unconstitutional "as against petitioner under the circumstances here disclosed." The circumstances there disclosed were peculiar, in that the net result was that it appeared as stated on page 519 of 277 U. S., 48 S. Ct. 591, 593: "Thus, he [the collector] required the petitioner to pay more upon its taxable income than could have been demanded had this been derived solely from taxable securities."

Section 214 leaves no doubt as to the intention of Congress not to extend the privilege of deducting from gross income interest paid on money borrowed to buy or carry the notes unless the owner was an original subscriber.

In Nauts v. Slayton, supra, the court was concerned with municipal or state bonds only, while in the case at bar the securities are those of the United States, and no question of taxing a state security is involved, nor of interfering with the function of a state. We are in the case at bar considering whether Congress is so limited by the Fifth Amendment to the Constitution that it lacks the power to distinguish between the two classes of holders of federal securities. In Brushaber v. Union Pacific R. R. Co., supra, when the income tax imposed by the Tariff Act of 1913 was under consideration by the court, Mr. Chief Justice White, at page 24 in the opinion of 240 U. S., 36 S. Ct. 236, 244,

stated: "So far as the due process clause of the 5th Amendment is relied upon, it suffices to say that there is no basis for such reliance, since it is equally well settled that such clause is not a limitation upon the taxing power conferred upon Congress by the Constitution; in other words, that the Constitution does not conflict with itself by conferring, upon the one hand, a taxing power, and taking the same power away, on the other, by the limitations of the due process clause. * * * And no change in the situation here would arise even if it be conceded, as we think it must be, that this doctrine would have no application in a case where, although there was a seeming exercise of the taxing power, the act complained of was so arbitrary as to constrain to the conclusion that it was not the exertion of taxation, but a confiscation of property; that is, a taking of the same in violation of the 5th Amendment; or, what is equivalent thereto, was so wanting in basis for classification as to produce such a gross and patent inequality as to inevitably lead to the same conclusion." The owner of the Victory notes received his income intact, and that income remains exempt from taxation. There is no assurance in the bond that interest on money borrowed to buy or carry the security may be deducted from the owner's gross income. The holder of Victory notes may be in a class which present or future Revenue Acts grant a privilege, or he may not be included in such class.

The provisions of section 214 of the Revenue Act of 1921 (42 Stat. 239), in so far as they apply to the plaintiff, do not in my judgment exceed the power of Congress, and must be held to be a valid exercise of its discretion in defining the practical operation of the Act.

■■■ The Act of November 23, 1921 (42 Stat. 227), very clearly states that section 214 shall take effect as of January 1, 1921; so that Congress intended it to apply as of that date, and it would seem to be settled that by the authorities such retroactive feature is not unconstitutional. Cf. Cooper v. United States, 280 U. S. 409, 50 S. Ct. 164, 74 L. Ed. 516; Brushaber v. Union Pacific R. R. Co., supra; Taft v. Bowers, 278 U. S. 270, 49 S. Ct. 199, 73 L. Ed. 460, 64 A. L. R. 362.

Accordingly, the complaints are dismissed.

---

[1] The pertinent part of section 1403 is as follows: "That if any provision of this Act, or the application thereof to any person or circumstances, is held invalid, the remainder of the Act, and the application of such provision to other persons or circumstances, shall not be affected thereby." 42 Stat. 321.