## NEW JERSEY AUTOMOBILE CLUB

v.

## UNITED STATES.

No. 274–54.

United States Court of Claims.
March 2, 1960.

---

Alcide J. Fournier, Short Hills, N. J., for the plaintiff.

William T. Kane, Washington, D. C., with whom was Asst. Atty. Gen. Charles K. Rice, for the defendant. James P. Garland and Philip R. Miller were on the brief.

Fleming Bomar and Joseph E. McAndrews, Washington, D. C., filed a brief for American Automobile Association, amicus curiae.

JONES, Chief Judge.

The plaintiff, an accrual basis taxpayer, seeks to recover alleged overpayments of its Federal income taxes for the years 1947, 1948, and 1949. The initial issue concerns the taxpayer's claim of exemption from taxation under § 101(10) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 101(10). The alternative issue involves the tax treatment of prepaid annual membership dues.

The organization and the functions of the taxpayer are substantially similar to other automobile clubs which have recently been involved in this same type of litigation. It is incorporated under the laws of the State of New Jersey as a nonprofit organization without capital or shares. Under its charter with the American Automobile Association (AAA), the taxpayer's memberships are limited to three counties in New Jersey. The taxpayer's primary activities consist of rendering services to its members. Members are entitled to emergency road service, trip planning, tour books, hotel directories and related travel services, arrangements for shipments of cars abroad, bail bond service, and a personal accident insurance policy. The taxpayer also engages in activities designed to promote the safety and convenience of motorists.

We are confronted at the outset with the taxpayer's claim of exemption from Federal income taxation under § 101(10) of the Internal Revenue Code of 1939. Section 101(10) provides for exemption from taxation of

"Benevolent life insurance associations of a purely local character, mutual ditch or irrigation companies, mutual or cooperative telephone companies, or *like organizations;* but only if 85 per centum or more

of the income consists of amounts collected from members for the sole purpose of meeting losses and expenses. [Emphasis supplied.]"

The taxpayer urges that it is a "like organization." Its reasoning may be summarized as follows: The three types of organizations enumerated in § 101(10) —a life insurance association, a ditch company, and a telephone company— have nothing in common. However, they are all bound together by the word "benevolent" in the first instance and by the words "mutual" and "cooperative" in the second and third instances. The taxpayer concludes that the court must look to this common denominator of these three relative noncomparables. Should the court take this tack, so the argument runs, it would follow that organizations having the characteristics of *mutuality* or *cooperation* are "like organizations" and are therefore exempt.

■ We cannot agree with this interpretation of the statute.

Our approach to the problem must of course be guided by the rule that a claim for exemption from Federal taxation must be clearly made out. Atlantic Coast Line R. Co. v. United States, 1928, 66 Ct. Cl. 378, 401. "Taxes being the sole means by which sovereignties can maintain their existence, any claim on the part of any one to be exempt from the full payment of his share of taxes on any portion of his property must on that account be clearly defined and founded upon plain language." Bank of Commerce v. State of Tennessee, 1896, 161 U.S. 134, 146, 16 S.Ct. 456, 460, 40 L.Ed. 645.

If subsection (10) of § 101 is viewed, not in isolation, but (as we think it should be) in the context of the other subsections of § 101, the fallacy in the taxpayer's argument becomes readily apparent. The purpose of § 101 was to enumerate, in separate subsections, certain specific organizations which shall be exempt from taxation. This listing contains many organizations possessing the same common denominator (mutuality and cooperation) which the taxpayer attributes to the organizations enumerated in subsection (10). If the court is to hold that the Congress intended to exempt certain organizations under subsection (10) solely because they possess characteristics which are also common to many of the organizations listed elsewhere in § 101, it must necessarily gloss over the obvious fact that the Congress—despite the common characteristics of mutuality and cooperation—carefully spelled out these various exempt organizations in separate subsections. This we are unable to do.

■■ On the contrary, we think that in subsection (10) the Congress intended to exempt organizations which were like "benevolent life insurance associations of a purely local character," or like "mutual ditch or irrigation companies," or like "mutual or cooperative telephone companies," and not merely organizations which were like the distilled essence of these three relative noncomparables.[1]

The taxpayer's additional argument that its function is like or similar to that of the three organizations spelled out in subsection (10) suffers from the same basic fallacy. Even if we agree with the taxpayer that these mutual companies all provide services of a commercial nature to members, not for profit, but for their common good, we are still faced with the fact that this functional characteristic is common to many of the organizations listed elsewhere in § 101. Cf. Keystone Automobile Club v. Commissioner, 3 Cir., 1950, 181 F.2d 402, 405.

Moreover, an automobile club is too well known and too important for us to presume that the Congress would set forth in detail a variety of specific organizations entitled to exemption under the 19 subsections of § 101 and intend that an automobile club should be included in the general expression "like organizations" contained in subsection (10).

1. Cf. Chattanooga Automobile Club v. Commissioner, 6 Cir., 1950, 182 F.2d 551, 554.

Accordingly, we hold that the taxpayer is not exempt from Federal income taxation under § 101(10).[2]

■ We turn now to the alternative issue raised by the taxpayer—the tax treatment of the prepaid income of an accrual basis taxpayer. The problem arises because membership dues are paid to the taxpayer for one year in advance. The dues upon collection are commingled with all other cash receipts and deposits in its general bank account. The record of membership dues received, however, was maintained in a "dues" account as a liability in the taxpayer's general ledger. At the end of each tax year the taxpayer closed this account and transferred part of the balance in it to another liability account, called a "reserve for members" account.

The taxpayer's general manager testified that its method of establishing this reserve and deferring its income was to prorate 1⁄12 of the annual dues received to each month of the service membership. In this way, it sought to reserve on its books a part of the taxable year's income to meet obligations to its members (under their membership contracts) which experience presumably had shown would arise in the following year before the expiration of the membership contracts.

Therefore, the income from dues reported by the taxpayer in each of its tax returns for 1947 through 1949 did not include the amount transferred each year to the "reserve for members" account.

Contrawise, the taxpayer's annual system of bookkeeping resulted in its including in the income shown on its tax returns for each of the years 1947 through 1949 income from dues which it had actually received in the immediately preceding year.

The Commissioner of Internal Revenue disallowed the taxpayer's deferral of income from one year to another on the ground that advanced payments or prepaid dues received under a claim of right, without restriction as to their disposition, represent income in the year of *receipt* and should be taxed in that year, regardless of the method of accounting used. This position is based on language found in North American Oil v. Burnet, 1932, 286 U.S. 417, 424, 52 S.Ct. 613, 615, 76 L.Ed. 1197, where the Supreme Court said:

> "If a taxpayer receives earnings under a claim of right and without restriction as to its disposition, he has received income which he is required to return [for tax purposes], even though it may still be claimed that he is not entitled to retain the money, and even though he may still be adjudged liable to restore its equivalent."

In Automobile Club of Michigan v. Commissioner, 353 U.S. 180, 77 S.Ct. 707, 1 L.Ed.2d 746, rehearing denied, 1957, 353 U.S. 989, 77 S.Ct. 1279, 1 L.Ed.2d 1147, the Supreme Court dealt with the same method of treatment of prepaid automobile club membership dues used by the plaintiff in the case at bar.[3] For

---

2. The plaintiff, prior to oral argument, withdrew its claim for exemption under § 101(9) and § 101(7). Cf. American Automobile Ass'n v. Commissioner, 19 T.C. 1146 (claim for exemption as a business league under § 101(7)); Chattanooga Automobile Club v. Commissioner, 12 T.C. 967, affirmed 6 Cir., 1950, 182 F.2d 551 (claim for exemption under § 101(7) and § 101(9) as a club organized for nonprofit purposes); Keystone Automobile Club v. Commissioner, 12 T.C. 1038, affirmed 3 Cir., 1950, 181 F.2d 402 (claim for exemption under § 101(9)).

Because of our disposition of the exemption phase of the case, it is unneces-

sary to decide whether the taxpayer has met the additional requirement of § 101 (10) that 85 percent of its income was received from members for the sole purpose of meeting losses and expenses.

3. The Supreme Court, in affirming the Commissioner's determination that the taxpayer's method of accounting did not clearly reflect income, stated: "The petitioner does not deny that it has the unrestricted use of the dues income in the year of receipt, but contends that its accrual method of accounting clearly reflects its income, and that the Commissioner is therefore bound to accept its method of reporting membership dues. We do not

the reasons stated in American Automobile Association v. United States, Ct.Cl., 181 F.Supp. 255, we hold that the Court's decision in Automobile Club of Michigan precludes us from overruling the Commissioner's determination that the plaintiff's method of accounting does not clearly reflect income.

The taxpayer, however, has sought to overcome the obstacle posed by the language of the Supreme Court in Automobile Club of Michigan by attempting to show that its own pro rata allocation of the membership dues in monthly amounts is not artificial, but that it does, in fact, bear a relation to future demand services, which, it claims, may be predicted with reasonable accuracy. But even if we were to hold that Automobile Club of Michigan permitted the plaintiff to make such a showing, we would nevertheless be forced to conclude from an examination of the evidence that the plaintiff's method of accounting does not clearly reflect income.

Using the taxpayer's 1948 tax return as an illustration, we find that the taxpayer has attemped to show that its pro rata allocation in equal monthly amounts reasonably matched actual expenses with the earning of related revenues. It has placed in evidence an exhibit which purports to show that "actual operating expenses" in 1949 relating to or arising out of liabilities or obligations incurred under the 1948 prepaid membership contracts amounted to $53,605.20. In reality, this figure constitutes merely an estimate, which has not been shown to accurately reflect the taxpayer's past experience in servicing its members' contracts. It is merely a computation of the average cost of servicing a member's contract in 1948 multiplied by the over-all percentage (56%) of the membership contracts purportedly extending into the following year.[4] If, as the taxpayer contends, its "actual operating expenses" in 1949 arising out of obligations incurred under the 1948 prepaid membership contracts amounted to $53,605.20, it is difficult to comprehend why it was necessary to defer $85,207.07 of the membership dues collected in 1948 to match these expenses.

Furthermore, the method of obtaining this over-all percentage of the membership contracts extending into the following year is defective. The taxpayer has arrived at this percentage (56%) by not recognizing as income in 1948 the entire amount of prepaid dues collected in December of 1948. Likewise, the percentage of membership contracts extending into the following year (1949) was further increased by the taxpayer's deferral of $\frac{1}{12}$ of the amount of the dues received in January of 1948. It is more than obvious, however, that at least some of the dues collected in January and in December, respectively, were earned in those two months. If this obvious fact is taken into account the percentage figure would be closer to 52%, rather than 56%. We are forced to conclude that,

---

agree. Section 41 of the Internal Revenue Code of 1939 required that '[t]he net income shall be computed * * * in accordance with the method of accounting regularly employed in keeping the books * * * but * * * if the method employed does not clearly reflect the income, the computation shall be made in accordance with such method as in the opinion of the Commissioner does clearly reflect the income. * * *' *The pro rata allocation of the membership dues in monthly amounts is purely artificial and bears no relation to the services which petitioner may in fact be called upon to render for the member.* Section 41 vests the Commissioner with discretion to determine whether the petitioner's method of accounting clearly reflects income. We cannot say, in the circumstances here, that the discretionary action of the Commissioner, sustained by both the Tax Court and the Court of Appeals, exceeded permissible limits. See Brown v. Helvering, 291 U.S. 193, 204–205, 54 S.Ct. 356, 361, 78 L.Ed. 725." Automobile Club of Michigan v. Commissioner, 353 U.S. at pages 189–190, 77 S.Ct. at page 712. (Emphasis supplied.)

4. Cf. Automobile Club of Michigan v. Commissioner, 353 U.S. at page 189, 77 S.Ct. at page 712; Bressner Radio, Inc. v. Commissioner, 2 Cir., 1959, 267 F.2d 520, 529.

if the taxpayer's pro rata allocation of the membership dues in equal monthly amounts accurately matches expenses with revenues, it has not been demonstrated here.

Even if the taxpayer had shown that the pro rata allocation of membership dues in monthly amounts clearly reflects income, it is patent on the facts before us that the taxpayer did not follow this method. The taxpayer's general ledger indicates that the taxpayer received $117,248.14 in membership "dues" in 1948. The ledger also shows that the taxpayer collected $16,613 in "entrance fees" that same year. This latter item apparently covers the $5 application fee which each new member was required to pay in addition to the regular membership dues.[5] The sum of these two items ($117,248.14 plus $16,613) is $133,861.-14. It is a part of this sum which the taxpayer treated as income in 1949 (the year a part of this sum was allegedly earned), rather than in 1948 (the year of receipt). Using the taxpayer's percentage figure, it is apparent that no more than $74,962.24 (56% of $133,861.-14) should have been deferred in 1948. The taxpayer, however, deferred from income $85,207.07 (or approximately 64%) of the membership dues collected in 1948.

But the major fallacy with the taxpayer's method is that a deferral of even 56% (or 52%) of the membership dues collected in 1948 would be artificial and unrealistic. The taxpayer bases its entire position on the premise that under the accrual method earning rather than receipt of payment determines inclusion in gross income, and that the clearest reflection of income is obtained by matching, in a given period, expenses and related revenues. Yet the taxpayer has failed to follow its own basic premise.

The very substantial factor which the taxpayer has not taken into consideration in its pro rata allocation of a member's dues in equal monthly amounts is the cost of acquiring the member. The expenses paid or incurred by the taxpayer in 1948 in acquiring members amounted to $33,-028. These expenses were deducted entirely in 1948. Since these substantial costs of acquiring members were deducted entirely in 1948, they must under the accrual concept, be deducted from the total membership dues *prior to* a determination of the amount of the membership dues which are *potentially* unearned in the year of receipt and thereby subject to deferral.[6] Therefore, if the accrual concept is to control, only $100,833.14 ($133,861.14 minus $33,028) could be said to be potentially unearned in 1948 and subject to a possible deferral for inclusion in income in a subsequent year.

The taxpayer, however, in its 1948 return deferred from income $85,207.07 of membership dues collected in that year. This constituted a deferral of approximately 84.5% [7] of that part of the 1948 membership dues which *might* not have been earned in 1948. This method of deferral is unrealistic on its face. The tax returns for the other two years involved in this case, 1947 and 1949, suffer from the same basic defect.

The Commissioner of Internal Revenue is given discretion under § 41 to determine whether the taxpayer's method of accounting clearly reflects income. The discretion exercised by the Commissioner in this instance did not exceed permissible limits. See Automobile Club of Michigan v. Commissioner, 1957, 353 U.S. 180, 77 S.Ct. 707, 1 L.Ed.2d 746.

The plaintiff's petition will be dismissed.

It is so ordered.

---

5. The taxpayer has not indicated to us any other revenues in 1948 which might be subject to deferral.

6. Cf. Bressner Radio, Inc. v. Commissioner, 2 Cir., 1959, 267 F.2d 520.

7. Even if only 56% of these acquisition expenses is subtracted from the total of

membership dues prior to a determination of the amount of the membership dues which are potentially unearned in the year of receipt, the taxpayer would still have deducted approximately 68% of such dues.

FAHY, Circuit Judge, sitting by designation, LITTLETON (Retired), and LARAMORE, Judges, concur.

WHITAKER, Judge (concurring).

I concur, but I do so, not only for the reasons stated herein, but for the additional reason stated in my concurring opinion in American Automobile Ass'n v. United States, Ct.Cl., 181 F.Supp. 259.