**THERMO KING CORPORATION**

v.

**The UNITED STATES.**

**No. 182–63.**

United States Court of Claims.
Dec. 17, 1965.

Davis, J., dissented.

Daniel M. Gribbon, Washington, D. C., attorney of record, for plaintiff. William H. Allen, Washington, D. C., L. E. Kust and Robert F. Pugliese, Pittsburgh, Pa., of counsel.

Philip R. Miller, Washington, D. C., with whom was Acting Asst. Atty. Gen., Richard M. Roberts, for defendant. C. Moxley Featherston, Lyle M. Turner and Conrad T. Hubner, Jr., Washington, D. C., of counsel.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS and COLLINS, Judges.

DURFEE, Judge.

This is an action for recovery of manufacturers excise taxes paid by plaintiff on sales of commercial refrigeration units designed to cool the interior of commercial trucks and trailers. Such units were taxed by defendant as automotive parts or accessories under § 4061(b) of the Internal Revenue Code of 1954, 26 U.S.C. § 4061(b) (1958 ed.).

The case is before the court on cross motions for summary judgment filed by

the parties on the basis of the petition and the answer and affidavits submitted by the parties in support of the motions.

During the initial period involved herein from 1932 to 1941 of manufacture and sale of truck and trailer refrigeration units by plaintiff, the following excise taxes were in effect:

There was a two percent excise tax on the manufacture and sale of automobile parts or accessories including parts or accessories for trucks under subsections (a) and (c) of § 606 of the Revenue Act of 1932, Ch. 209, 47 Stat. 261–262.[1]

There was also included in the same chapter of the Act a five percent excise tax on the sale by manufacturers of household type refrigerators and components under § 608, 47 Stat. 263–264.[2,3]

Shortly after enactment of the Revenue Act of 1932, the Bureau of Internal Revenue issued the following ruling:

Advice is requested relative to the application of section 608 of the Revenue Act of 1932 [the household refrigerator tax] to household type of refrigerators and refrigerator components.

Refrigerator parts or units, designed primarily and solely used for commercial purposes, are exempt from tax. These include ice cream cabinets, ice cream cabinet units, water coolers, lens chillers, and refrigerating units for commercial transportation equipment. * * * (S.T. 523, XI–2 Cum.Bull. 477 (1932)).

From 1932 until 1941 neither plaintiff nor any other manufacturer paid *any* excise tax on the sale of refrigerating units for transportation equipment insofar as the record herein reveals.

The Revenue Act of 1941, 55 Stat. 687, Ch. 412, amended the 1932 Act in two sections, particularly pertinent to this case. Subsection (b), § 544 of the 1941 Act [55 Stat. 711], entitled "Automobile, Truck, Bus and Parts Tax," increased the

---

1. SEC. 606. TAX ON AUTOMOBILES, ETC.
   There is hereby imposed upon the following articles sold by the manufacturer, producer, or importer, a tax equivalent to the following percentages of the price for which so sold:
   (a) Automobile truck chassis and automobile truck bodies (including in both cases parts or accessories therefor sold on or in connection therewith or with the sale thereof), 2 per centum. A sale of an automobile truck shall, for the purposes of this subsection, be considered to be a sale of the chassis and of the body.
        *    *    *    *    *
   (c) Parts or accessories (other than tires and inner tubes) for any of the articles enumerated in subsection (a) or (b), 2 per centum. * * *

2. SEC. 608. TAX ON MECHANICAL REFRIGERATORS.
   There is hereby imposed upon the following articles, sold by the manufacturer, producer, or importer, a tax equivalent to 5 per centum of the price for which so sold:
   (a) Household type refrigerators (for single or multiple cabinet installations) operated with electricity, gas, kerosene, or other means (including parts or accessories therefor sold on or in connection therewith or with the sale thereof).

(b) Cabinets, compressors, condensers, expansion units, absorbers, and controls (hereinafter referred to as "refrigerator components") for, or suitable for use as part or with, any of the articles enumerated in subsection (a) (including in each case parts or accessories for such refrigerator components sold on or in connection therewith or with the sale thereof) except when sold as component parts of complete refrigerators or refrigerating or cooling apparatus. Under regulations prescribed by the Commissioner, with the approval of the Secretary, the tax under this subsection shall not apply in the case of sales of any such refrigerator components by the manufacturer, producer, or importer to a manufacturer or producer of refrigerators or refrigerating or cooling apparatus. If any such refrigerator components are resold by such vendee otherwise than on or in connection with, or with the sale of, complete refrigerators or refrigerating or cooling apparatus, manufactured or produced by such vendee, then for the purposes of this section the vendee shall be considered the manufacturer or producer of the refrigerator components so resold.

3. Section 606, Ch. 209 of the Revenue Act of 1932 became Sec. 3403 of the Internal Revenue Code of 1939, and Section 608 became Sec. 3405 of the 1939 Code.

existing excise tax on truck parts and accessories to five percent. Section 546 [55 Stat. 713] of the same Act of 1941 amended § 3405 of the Internal Revenue Code of 1939 to impose a new excise tax of ten percent on the sale price by a manufacturer of "Mechanical Refrigerators," (a) Refrigerators, (b) Refrigerating Apparatus, (c) Air-Conditioners and (d) Components.[4]

When plaintiff (and at least one other similar manufacturer) in 1941, for the first time, began to pay any excise tax of any kind on the sale of its truck and trailer refrigeration units, it did so in compliance with the requirements of the 1941 Revenue Act, under § 546, supra, entitled "Mechanical Refrigerators." It paid the ten percent tax imposed thereunder, and defendant accepted the ten percent tax as asserted in plaintiff's tax returns for 1941 and 1942.

Section 3405 of the Internal Revenue Code of 1939, as amended by § 546 of the Revenue Act of 1941, supra, was amended by § 614 of the Revenue Act of 1942, 56 Stat. 978. This 1942 amendment in effect repealed the excise tax on commercial refrigerators, leaving the tax in effect only upon household type refrigerators.[5]

Upon the 1942 repeal of the ten percent tax on sale of commercial refrigeration units, plaintiff made no further payments of any excise taxes on the sale of its truck refrigerator units until 1945 when a Revenue Agent audited plaintiff's tax records returns for 1940–45. He reported that excise tax returns had not been filed except for the period October, 1941 through October, 1942 "when the company filed returns under the commercial refrigeration section of the Code at the rate of ten percent." The agent

---

4. Sec. 546. Mechanical refrigerators.

Section 3405 of the Internal Revenue Code is amended to read as follows:

"Sec. 3405. *Tax on refrigerators, refrigerating apparatus, and air-conditioners.*

"There shall be imposed on the following articles (including in each case parts or accessories therefor sold on or in connection with the sale thereof) sold by the manufacturer, producer, or importer a tax equivalent to 10 per centum of the price for which so sold:

"(a) *Refrigerators, etc.*—Refrigerators, beverage coolers, ice cream cabinets, water coolers, food and beverage display cases, food and beverage storage cabinets, ice making machines, and milk cooler cabinets, each such article having, or being primarily designed for use with, a mechanical refrigerating unit operated by electricity, gas, kerosene, or gasoline.

"(b) *Refrigerating apparatus.*—Compressors, condensers, evaporators, expansion units, absorbers, and controls, for, or suitable for use as part of, or with, a refrigerating plant, refrigerating system, refrigerating equipment or unit, or any of the articles enumerated in subsection (a).

"(c) *Air-conditioners.*—Self-contained air-conditioning units.

"(d) *Components.*—Cabinets, compressors, condensers, fans, blowers, heating coils, cooling coils, filters, humidifiers, and controls, for, or suitable for use as part of, or with, any of the articles enumerated in subsection (c)."

5. Sec. 614. Refrigerators, refrigerating apparatus, and air-conditioners.

Section 3405 is amended to read as follows:

"Sec. 3405. *Tax on mechanical refrigerators and self-contained air-conditioning units.*

"There shall be imposed on the following articles (including in each case parts or accessories therefor sold on or in connection with the sale thereof) sold by the manufacturer, producer, or importer a tax equivalent to 10 per centum of the price for which sold:

"(a) *Refrigerators.*—Household type, refrigerators (for single or multiple cabinet installations) having, or being primarily designed for use with a mechanical refrigerating unit operated by electricity, gas, kerosene, or gasoline.

"(b) *Refrigerating apparatus.*—Cabinets, compressors, condensers, evaporators, expansion units, absorbers, and controls for, or suitable for use as parts of or with, household type refrigerators of the kind described in subsection (a) except when sold as component parts of complete refrigerators or refrigerating or cooling apparatus.

"(c) *Air-conditioners.*—Self-contained air-conditioning units."

then concluded, and defendant for the first time asserted, that refrigeration units for trucks and trailers had always been taxable under the excise tax for automotive parts or accessories, rather than for commercial refrigerator units. However, he did not recommend, nor did the Government concede, any refund of the difference between this five percent automotive parts tax and the ten percent commercial refrigerator tax paid by plaintiff for the period 1941–1942.

From the record we find that from the enactment of the Revenue Act of 1932, neither plaintiff nor any other manufacturer paid any excise tax on the sale of truck refrigeration units under the provisions of the Act relating to automotive parts or accessories until 1945, when the Government for the first time asserted that plaintiff was liable for payment of this tax. Although plaintiff did not commence sales of its truck refrigeration units until 1939, it is clear that similar units must have been on sale from 1932 when the Bureau of Internal Revenue ruled in 1932, supra, that "refrigerating units for commercial transportation" were exempt from tax.

Defendant, nevertheless, asserts that these truck refrigeration units were always subject to the tax on automotive parts or accessories, and never were intended to be included under the ten percent 1941 tax on commercial refrigeration. Despite the fact that plaintiff paid, and the Government accepted payment of this higher tax from 1941 until its repeal in 1942, and despite the fact that these units never were taxed until 1945 as automotive parts or accessories, defendant has argued in extensive detail that "In sum, the seven units involved in the instant case would not have been taxable under the 1941 tax on commercial refrigerators because they are only refrigerating units, mechanisms used to cool automotive vehicles and are not named in the subsection [(a) § 546, Rev. Act of 1941] as a taxable article." (sic) Defendant asserts that there is a distinction between the eight articles specified under the above subsection and a

"mechanical refrigerating unit," which term defendant asserts more precisely describes the seven models described in the instant case and that a "mechanical refrigeration unit" might be a part of a taxable article, but was not taxable itself.

Plaintiff's units involved in this case consist of one-piece commercial refrigerating units designed to be inserted part way through a prepared opening in the front of the body of a truck or trailer. Plaintiff also manufactures and sells two-piece units consisting of a condensing section mounted under the trailer, and an evaporation section located inside the trailer nose with refrigerant lines connecting the two. These units are primarily designed and used to provide refrigeration for the commercial transportation by truck or trailer of perishable products and frozen foods. Plaintiff markets its refrigeration units and other products through 200 dealers located throughout the United States.

Subsection (a), supra, under the title, "Refrigerators," specifically includes:

> Refrigerators, beverage coolers, ice cream cabinets, water coolers, food and beverage display cases, food and beverage storage cabinets, ice making machines, and milk cooler cabinets, each such article having, or being primarily designed for use with, a mechanical refrigerating unit operated by electricity, gas, kerosene, or gasoline.

Subsection (b) under the title, "Refrigerating Apparatus," specifically includes:

> Compressors, condensers, evaporators, expansion units, absorbers, and controls, for, or suitable for use as part of, or with, a refrigerating plant, refrigerating system, refrigerating equipment or unit, or any of the articles enumerated in subsection (a).

Subsection (c) refers to Air-Conditioners, and subsection (d) refers to components of the articles enumerated in subsection (c), and are clearly not ap-

plicable here. However, neither subsection (a) nor (b) names "refrigerating units" *per se*, in the enumeration of articles specified as taxable thereunder, but each subsection refers to each of these specified articles as being designed for use with, or a part of, "a refrigeration unit." Nevertheless, both parties have consistently described plaintiff's equipment as a "refrigeration" unit, and we will adopt this terminology.

From an examination of the companion section of the Revenue Act of 1941 imposing the five percent tax on automotive parts, and the pertinent regulations adopted thereunder, there is no mention of a "refrigeration unit." Accordingly, we are confronted with an anomalous situation of plaintiff arguing that its "refrigeration units" were taxable in 1941 under the refrigeration tax, and defendant arguing that plaintiff's refrigeration units were taxable under the 1941 tax on automobile parts and accessories, although "refrigeration units" *per se*, are nowhere specifically declared as taxable under either section of the 1941 Act. Defendant relies largely upon Treasury Regulations on Manufacturers Retailers Excise Tax (1954 Code):

SEC. 40.4061(b)-2—*Definition of parts or accessories*

(a) *In general.*—The term "parts or accessories" includes (1) any article, the primary use of which is to improve, repair, replace, or serve as a component part of an automobile truck or bus chassis or body, or other automobile chassis or body, or taxable tractor, (2) any article designed to be attached to or used in connection with such chassis, body, or tractor to add to its utility or ornamentation, and (3) any article, the primary use of which is in connection with such chassis, body, or tractor, whether or not essential to its operation or use. * * * The term "parts or accessories" includes all articles which have reached such a stage of manufacture as to be commonly known as parts or accessories whether or not fitting opera-

tions are required in connection with their installation. 26 C.F.R., Sec. 40.4061(b)-2.

At no time during the period 1932 up to 1945, did the Bureau of Internal Revenue ever assert that truck or trailer refrigeration units were subject to the tax on automotive parts and accessories under the regulations, but on the contrary, ruled in 1932 that " * * * refrigerating units for commercial transportation are exempt from tax." supra.

If there is any ambiguity in the refrigeration tax statute of 1941 as to whether Congress meant to include "refrigeration units," it is resolved by the report of the House Ways and Means Committee on the proposed tax:

Under existing law the tax on mechanical refrigerators applies only to those of the household type and components and parts thereof. *Under the bill, this tax will apply to all mechanical refrigerators and refrigerating units, whether of household or other type.* [Emphasis supplied.] H.R.Rep.No.1040, 77th Cong., 1st Sess. 49 (1941). See also id. at 32; S.Rep.No.673, Pt. 1, 77th Cong., 1st Sess. 55 (1941).

■■ Where a statute is ambiguous, the courts, in construing it, are permitted to consider the report of a Congressional committee reporting the bill for its enactment. Standard Oil Co. of Indiana v. United States, 5 F.Supp. 976, 78 Ct.Cl. 714 (1934); cert. den. 293 U.S. 599, 55 S.Ct. 116, 79 L.Ed. 692 (1934). It is the statutes themselves which must be construed, and legislative materials are important only to the extent they shed light on ambiguities in the statutes. Merrill v. United States, 105 F.Supp. 379, 122 Ct.Cl. 566 (1952).

Defendant asserts that this statement of Congressional intent merely indicates that most refrigerating units or mechanisms would be affected by the 1941 amendment because at the least, some of their components would be subject to the tax, and that the above quotation by the House Ways and Means Committee

does not purport to state "that every refrigerating unit in its entirety would be subject to the tax." (sic). The Committee statement speaks for itself; "All refrigerating units" certainly includes "every refrigerating unit," without qualification.

Defendant argues that this clear and unequivocal statement by the House Committee was made in the "Summary of Principal Features" of the bill; that it must logically give way to the Detailed Discussion of the provisions of the bill; and that "the Summary apparently meant to refer to subsection (b) on components rather than units." (sic) Defendant relies on other portions of the Committee report which it considers pertinent:

> Section 546 amends section 3405 of the Code to increase the tax rate to 10 per cent and to make the tax applicable to the principal commercial types of refrigerators, including such articles as ice cream cabinets, food and beverage display cases, water coolers, milk cooler cabinets, and similar articles. In addition, *there are brought within the scope of the tax components* of refrigerating apparatus such as compressors, condensers, evaporators, expansion units, absorbers and controls. *However, the tax with respect to such components is not limited to components for the household, commercial, and industrial type of refrigerator units referred to above. Refrigerating components will be subject to tax regardless of their intended use. For example, components for refrigerator ships and refrigerator cars* and for the refrigerating plants of breweries and cold-storage warehouses *will be subject to the tax.* [Emphasis supplied.] H.Rep.No.1040, 77th Cong., 1st Sess., p. 56 (1941–2 Cum.Bull. 413, 456); S.Rep.673, Part 1, 77th Cong., 1st Sess., p. 49 (1941–2 Cum.Bull. 466, 503–504).

Defendant points out that the examples of components as hereinabove mentioned by the Committee which would be taxed, even though they did not go into articles which were taxable as refrigerators under subsection (a), were the components for refrigerator ships and refrigerator cars. The significance of this, defendant argues, is that it means that refrigerating units which go into railroad cars and ships are not "refrigerators"; therefore, plaintiff's similar truck refrigerating units are likewise not "refrigerators." Defendant overlooks the fact that the House Committee did not say that the components that go into refrigerator ships and cars included refrigeration units, *per se*, but on the contrary, referred to "components" for "refrigerator units." Actually, the literal use of the word "component" in the 1941 Act is confined to subsections (c) and (d) relating solely to air-conditioning units.

This tenuous analysis of that portion of the House Report cited by defendant certainly fails to establish that when the House Committee in the Summary of its Report stated that this ten percent tax on commercial refrigeration would apply to all refrigerating units, it meant to refer to subsection (b) on refrigerating components rather than units, as defendant contends.

In retrospect, the House Committee was offering a bill in 1941 which added a new tax on commercial refrigeration to the existing tax on household refrigeration. The Committee must have known at that time that ever since 1932, commercial refrigeration units, including units for commercial transportation equipment had been officially declared exempt from tax, and never had been taxed, either as refrigeration or as automotive parts and accessories. At this same session, and as part of the same revenue act, the Congress was amending the companion tax on automotive excise tax provisions to increase the tax and to include for the first time parts and accessories for truck trailers and semi-trailer bodies. No change was made in the wording of this section of the 1941 Act to propose for the first time that automotive parts and accessories in-

cluded refrigeration units, nor can any such intent by Congress be reasonably inferred in view of the attending circumstances.

There is no reason to believe that when the Committee in its Summary on the 1941 refrigeration tax bill stated that "under the bill, this tax will apply to all mechanical refrigerators and refrigerating units, whether of household or other types," it meant anything but the clear and unmistakable purport of this statement.

We first conclude that (1) sales of truck refrigeration units for use in commercial transportation never were taxed or taxable under any excise tax statute from 1932 to 1941; (2) that sales of this same type of refrigerator units became taxable at ten percent under § 546 of the Revenue Act of 1941, supra, during the period October 1, 1941 to November 1, 1942 and that plaintiff paid, and defendant accepted payment of this tax for this period; (3) that the sales of this equipment by plaintiff were not taxed or taxable as sales of automotive parts or accessories under § 606 of the Revenue Act of 1932 as amended, including its amendment by section 544 of the Revenue Act of 1941.

We turn now to the contention by plaintiff that upon the elimination or repeal of the 1941 ten percent tax on commercial mechanical refrigeration by § 614 of the Revenue Act of 1942, supra, the sale of its truck refrigeration units were no longer subject to any other excise tax. Consequently, plaintiff argues, the sale of its truck refrigeration units has been erroneously subjected to the excise tax on automotive parts and accessories since 1945.

There is nothing in the legislative reports on the 1942 Revenue Act, § 614, supra, which explains why Congress repealed the tax on commercial refrigeration. The Committee reports on the bill merely state that the statute was redraft-ed so as to confine or limit the application of the refrigeration tax to household type refrigerators or parts thereof, and to air-conditioning units and parts.[6]

We need not determine whether there is anything to indicate any intent to exempt automotive parts or accessories from the five percent tax "merely because they might also have been classified as refrigerators or might have previously been taxed as refrigerators at ten percent," as argued by defendant. (sic) Since there was no indication that truck refrigeration units had ever been taxed, or considered as taxable, as automotive accessories up to 1942, there was no occasion for Congress to express any intent as to application of or exemption from this tax. If, *for the first time*, there had been any proposal to shift the ten percent tax on commercial refrigeration units used in transportation, to the five percent tax on automotive parts or accessories, unaccompanied by any change in the statute itself, we would at least expect an appropriate expression of this new legislative intent—but there is none.

Section 4061 of the Internal Revenue Code of 1954, 26 U.S.C. § 4061 (1958 ed.) imposed an increased tax of eight percent on auto parts or accessories for auto or truck chassis and bodies. Again, there was no indication that this section included truck refrigeration units. Under general definition of parts and accessories in Treasury Regulation on Manufacturers and Retailers Excise Taxes, § 40.4061(b)–2, supra, subsection (d) of this Regulation specified a wide variety of examples:

(d) *Examples of articles taxable as parts or accessories.* Examples of articles which are taxable as parts or accessories are: Automobile air conditioners, baby seats for automobile, automobile beds, automobile hammocks, automobile clutches, bottle warmers and heating pads designed to operate from au auto-

---

**6.** (S.Rep. No. 1631, 77th Cong., 2d Sess., pp. 59, 265–266 (1942–2 Cum.Bull. 504, 552, 698)).

H. Conference Rep. No. 2586, 77th Cong., 2d Sess., pp. 77–78 (1942–2 Cum. Bull. 701, 703).

mobile cigarette lighter, automobile radio antennae, automobile license plate frames, automobile clocks, automobile mirrors and mirror brackets, purses for carrying parking meter coins or cases for carrying registration cards when designed for attachment to an automobile; safes primarily designed for use in taxable motor vehicles; electric bulbs primarily designed and adapted for use on automobiles, automobile floor mats, jacks of the mechanical or hydraulic bumper, screw, ratchet, scissors, or other type primarily designed * * * for use in garages and repair shops; dollies of the type commonly known as converter dollies which are used as connectors to convert semi-trailers to full trailers; tool kits recommended for use with automobiles, automobile seat covers of any construction whether they are ready-made or custom fitted, and fitted truck top covers. [26 C.F.R., Sec. 40.4061(b)–2(d)].

While this list did not purport to be exclusive, we note the absence of any reference to truck refrigerator units, which would certainly have been a significant new taxable item worthy of mention. Since the Regulations made no mention of any such change in taxable status of commercial refrigeration units, it can hardly be argued that Congress had such a change in mind in the enactment of the 1954 Statute, even though plaintiff's units had actually been taxed since 1945 as auto parts and accessories. This is in clear distinction from the express law, the Regulations and the taxing practice in existence at the time of the 1942 repeal of the tax on commercial refrigeration. At that time, plaintiff's units were subject to the 1941 tax on commercial refrigeration, and never had been subject to the companion tax on auto parts or accessories.

The 1942 Act was not a repeal by implication of the tax on auto parts or accessories, as applied to plaintiff's units, which had never been taxable or taxed under this section since 1932; it was an express repeal of the tax on commercial refrigeration equipment to which plaintiff's units had been previously and solely subject. No discriminatory exemption to plaintiff from the automotive parts or accessories tax results from the 1942 Act, and all of plaintiff's competitors in the manufacture and sale of truck refrigeration units are in the same legal position.

■ Under the doctrine established in United States v. Leslie Salt Co., 350 U.S. 383, 76 S.Ct. 416, 100 L.Ed. 441 (1956) and J. P. Seeburg Piano Co. v. United States, 62 Ct.Cl. 281 (1926) an article subject to tax under a specifically applicable provision, viz., refrigerators or refrigerator units, where there was at the same time a more general provision argued as applicable, and the provision to which the article was specifically subject is repealed, the article does not become taxable under the more general provision, *in the absence of an explicit statement of Congressional purpose that it be so taxable.*

In United States v. Leslie Salt Co., supra, the Government contended that certain promissory notes convertible into a series of coupon notes were taxable under a statute applicable to debentures and certificates of indebtedness, but not in *haec verba* to promissory notes. In the past, promissory notes, *per se*, had been subject to a different and lower tax, and that tax had been repealed several years before while the tax on debentures and certificates of indebtedness was continued. The Court first reached this conclusion (350 U.S. at p. 388, 76 S.Ct. at p. 420):

* * * For unless the earlier statutes were intended to impose two taxes on the same instrument, which we should not assume, or the present tax on debentures and certificates of indebtedness is broader in scope than that in effect in 1924, of which there is no indication it would seem to follow that these notes should not now be taxed if they can be said to fall within the class of "promissory

notes" on which the tax was repealed.

The Court went ahead to find that the instruments in question were promissory notes within the meaning of the repealed statutory provision and that Congress had done nothing to impart to "debentures" and "certificates of indebtedness" a meaning different from that which the phrases had had when they were in statutory parallel with promissory notes.

In its opinion the Court noted that the Government for years had taken the position that notes such as were involved were taxable only under the promissory note section of the Code and had changed its view because of a recent favorable decision by the Court of Appeals for the Second Circuit.[7]

As to this change of position, the Court said (at p. 396, 76 S. at p. 424):

Against the Treasury's prior long-standing and consistent administrative interpretation its more recent *ad hoc* contention as to how the statute should be construed cannot stand. Moreover, that original interpretation has had both express and implied congressional acquiescence, * * *.

This language of the Court is particularly applicable to the contention of defendant that a payment by plaintiff of the tax on automotive parts or accessories for the sale of its refrigerator units since 1945 is a highly persuasive indication of the correctness of defendant's position. These payments were made only in compliance with the command of the Internal Revenue Service in 1945, which reversed the prior 1932 Bureau ruling and the actual preceding tax practice.

In the J. P. Seeburg Piano Co. case, supra, plaintiff there was in the business of manufacturing and selling coin-operated pianos. The question was whether the machines were taxable as "automatic slot-device vending machines." The tax on such machines had first been imposed by a section of the Revenue Act of 1918. That section was carried forward by a section of the Revenue Act of 1921, under which the case arose. Another section of the Revenue Act of 1918 imposed a tax upon "pianos, organs * * *, piano players, * * *." Plaintiff's player pianos were taxed under that section from 1918 to 1921, but it was repealed in 1921. The Government thereupon asserted a tax under the coin device section.

This Court, though stating that "if the case depended alone upon technical distinctions it is doubtful if plaintiff could escape the tax," held that by the repeal of the specific piano tax in 1921 Congress meant to free instrumental music from tax and therefore tax could not be asserted under the slot machine section of the statute. The court concluded (62 Ct.Cl. at p. 285):

In our view of the issue we incline to the view that where Congress by separate paragraphs of a taxing act specifically taxes two distinct classes of instrumentalities capable of rendering service, and thereafter repeals the law as to one and leaves the other in force, the repeal operates to relieve what came within the provisions of the former law from taxation.

In arguing against the above statement by this court, defendant cites only one case, Remington-Rand, Inc. v. Gage, 4 F. Supp. 199, 200 (W.D.N.Y., 1933) in which defendant states that the District Court specifically disagreed with the general statement as well as the conclusion in Seeburg. (sic)

The Court's actual statement was:

* * * The opinion in that case, while it states that the repeal of paragraph 4 of the act of 1918 is significant, finds it necessary to discuss the question of whether the coin device on the piano brings it within the paragraph levying a tax upon automatic slot device vending machines, and concludes with: "We do

7. General Motors Acceptance Corporation v. Higgins, 161 F.2d 593 (2d Cir. 1947).

not treat the hearing of music as a sale of the same." By this language the court in that case took the position that operating a piano by depositing a coin did not make it a vending machine. It is true that the opinion goes further and states the view that the repeal of paragraph 4 *of the 1918 act* discloses an intention to relieve all music from taxation however produced. I am not inclined to agree with this conclusion, *especially in view of the change in the law made by the act of 1924.* [Emphasis supplied.]

The rules stated in the Leslie Salt Co. and Seeburg Piano Co. cases, supra, apply even more forcefully where the general statute (Automotive Parts and Accessories) predated the repealed specific statute (Commercial Refrigeration Equipment) and the general statute was interpreted and administered as not covering the specific subject before the repeal of the specific statute.

We conclude finally that the 1942 repeal of the 1941 tax on Commercial Refrigeration ended plaintiff's tax liability under the facts in this case, and that plaintiff is entitled to recover on its petition.

Plaintiff's motion for summary judgment on the petition is granted, and defendant's cross-motion is denied. Plaintiff is entitled to recover on its petition, and judgment is entered to that effect. The amount of recovery will be determined under Rule 47(c) of the Rules of this court.

DAVIS, Judge (dissenting):

If we look only at the skin of the automotive-tax statute and regulations, we are forced, I think, to rule that plaintiff's equipment is covered. Section 4061(b) of the 1954 Code levies the tax on sales of "parts and accessories" of trailers and semitrailers. The regulation (Treas.Reg. § 40.4061(b)–2) includes within "parts and accessories" articles primarily designed to improve a truck (or chassis) or to be attached to it in order to add to its utility, whether or not the article is essential to operation or use. The first example given is an "automobile air conditioner." From the taxpayer's own affidavits and publications, it is beyond dispute that the products before us fit the words of this definition which the Supreme Court has already upheld (in an earlier version). Universal Battery Co. v. United States, 281 U.S. 580, 50 S.Ct. 422, 74 L.Ed. 1051 (1930).

Plaintiff would escape by invoking the history of the "parts and accessories" tax as affected by the short-lived "commercial refrigeration" duty. The court accepts this contenton, but I cannot. With the majority and the plaintiff, I assume that the 1941–1942 refrigeration tax reached the type of equipment now in question and that, upon the repeal of that tax in 1942, plaintiff was no longer subject to a refrigeration levy. Nevertheless, there inheres in plaintiff's argument a basic fallacy. This is the triple assumption that (i) before 1941 the parts-and-accessories tax did not cover the forerunners of plaintiff's current refrigerating units, but that if it did (ii) the one-year commercial refrigeration tax (higher than the parts-and-accessories rate) carved out, *for all time*, these machines from the automotive tax; and (iii) upon the repeal of the refrigeration tax in 1942, the machines could not, once again, be deemed the "parts and accessories" they were prior to the 1941–1942 refrigeration tax. As I see the matter, plaintiff's present devices (if they existed at that time) would have been taxable, prior to the 1941 refrigeration duty, under the parts-and-accessories portion of the automotive tax; during 1941 and 1942 they were taxable under the higher rate of the refrigeration tax; but after the repeal of that impost in 1942, they again became taxable at the lower rate of the parts-and-accessories tax.

The prototypes of the plaintiff's machines were first sold in 1939.[1] The Internal Revenue Code of 1939, § 3403(a), imposed a 2% tax on "parts or accessories" for "[a]utomobile truck chassis, automobile truck bodies, * * * tractors of the kind chiefly used for highway transportation in combination with a trailer or semitrailer * * *."[2] The then-pertinent regulations, as well as those under the preceding legislation (see footnote 2), contained substantially the same definition of "parts and accessories" as was applicable to the sales of taxpayer's machines in 1961 and 1962. Treas.Reg. 46 (1940 ed.), § 316.55; Treas.Reg. 46 (Rev.Act of 1932), art. 41.[3] I cannot avoid the conclusion that, down to 1941, the plaintiff's prototypes were clearly taxable under those broad provisions. Plaintiff makes no persuasive argument to the contrary. It notes that the machines were not in fact taxed at that time. But in construing such tax legislation it is of small moment that the Internal Revenue Service did not actually get around to assessing this tax on plaintiff's transactions from 1939 to 1941—particularly since the higher 1941 commercial refrigeration tax came into being so soon after plaintiff's devices first appeared on the market.[4] Plaintiff and the court also rely, mistakenly in my judgment, on a Service ruling (S.T. 523, XI–2 Cum.Bull. 477 (1932)) that the *household* refrigeration tax did not apply to "refrigerator parts or units designed primarily and solely for commercial purposes," including "refrigerating units for commercial transportation equipment." This ruling answered an inquiry as to the incidence of the household-refrigerator tax—nothing else—and the statement that *commercial* refrigerators "are exempt from tax" meant only that such machines were exempt from the particular tax (i. e., the household refrigerator duty) about which questions had been raised. There is no intimation that the Service was announcing, though not asked to do so, that no excise tax of any nature applied, or could apply, to the enumerated articles.[5] In short, it is plain to me that the prototype devices for refrigerating trucks and trailers which plaintiff manufactured from 1939 to 1941 were subject to the 2% parts-and-accessories segment of the automotive tax—the terms of which squarely blanketed that equipment.

Then came the commercial refrigeration tax of October 1941, with its 10% rate,[6] which (I assume) governed the

1. The affidavit of the Chairman of the Board of plaintiff states that plaintiff's predecessor began "the manufacture of commercial refrigeration units for use in over-the-road trailers" in 1938.

2. Section 606 of the Revenue Act of 1932, 47 Stat. 261–262, had placed the tax on "parts or accessories" for "automobile truck chassis and automobile truck bodies." This was extended by various statutes through the 1939 Code. The Revenue Act of 1938, § 709, 52 Stat. 571, specifically included the tractor-trailer combination.

3. This definition goes back, in substance, to 1919.

4. The court's opinion says that similar units must have been on sale (by others) at least from 1932, but there is very little in the record to support that view of the facts, and much opposed. Plaintiff's leading affidavit declares that, prior to · the undertaking by the predecessor firm in 1938, over-the-road refrigeration was accomplished by the use of ice and salt, pre-cooled plates, or mechanical refrigerating units which were impractical for large trailers. Plaintiff's brochures stress the novelty of the Thermo King developments in the late 1930's and the prior dearth of comparable equipment. (It is worth noting, in view of the court's assumption, that the taxpayer has the burden of proof in this refund suit.)

5. Also, it seems probable that in 1932 the reference to "refrigerating units for commercial transportation equipment" meant to designate (a) railroad and ship carriage which were practically the only commercial transportation at that time using refrigerating units comparable to plaintiff's present-day machines (see footnote 4, supra), and (b) ice cabinets and similar old-time coolers for trucks.

6. At the same time the parts-and-accessories tax was lifted to 5%.

taxpayer's articles (to the exclusion of the lower parts-and-accessories tax) during the one year it lasted. But it was repealed as of November 1, 1942. I see no reason why, at that time, the machines did not again become automatically subject to the lower (5%) parts-and-accessories tax. Taxpayer agrees that this question turns entirely on the intent of Congress in adopting and then discarding the refrigeration tax. This 1941 levy, it is said, must have impliedly repealed the coverage by the parts-and-accessories tax of truck-trailer refrigeration machines since it would not do to have both taxes apply to the same products; and when the refrigeration tax was itself removed from the books a year later, without the reinsertion of these machines into the automotive tax, they must have been left wholly untaxed from that point until today.

A more realistic and accurate appraisal, I suggest, recognizes the overlap in coverage of the parts-and-accessories tax and the refrigeration duty; the language and reach of both could well include equipment of the type now in contest. Congress did not, of course, advert to this overlap and was probably unaware of it. All can concur, however, that Congress did not wish both taxes to be imposed simultaneously on the same machine. So long as the two co-existed, one would be dominant. But there is no need to insist—contrary to the usual canon (Drew v. United States, 340 F.2d 365, 367, 169 Ct.Cl. 69 (Jan. 1965)—on an implied repeal of the other. The refrigeration tax was the higher (10%, rather than 5%) and doubtless Congress would desire it to be the one collected. To the extent of the overlap, the automotive tax, at 5%, would therefore remain in abeyance—suspended, quiescent. When the overlay disappeared with the abandonment of the refrigeration tax in 1942, the lesser tax would revive and become effective once more. This evaluation of the interaction of the two taxes—giving each its place—more nearly accords with the probable legislative design than to imply an unnecessary repeal and sudden death of the lower-rated tax in 1941, with the inevitable conclusion that, through absent-mindedness, Congress left plaintiff's devices entirely untaxed when it repealed the refrigeration assessment in 1942.[7] Since all other "parts and accessories" of trucks and trailers have remained taxed, there is no reason to think that air-conditioning machines of this type were to be specially favored.[8]

A simple example may illustrate my point. Suppose that Congress had for some time taxed the sale of "footwear" at 5% and then in 1941 had levied a 10% tax on the sale of all sports apparel, including sneakers; a year later, however, this 10% tax was repealed, leaving the "footwear" tax at 5% still outstanding. The correct reading of this tax history, it seems to me, is that prior to 1941 sneakers would be taxed at 5%, from 1941 to 1942 at the higher 10% rate, and after 1942 at 5% again. The wrong reading would be to say that, after the repeal of the higher tax in 1942, the sale of sneakers became free from tax, although all other footwear remained liable. In my opinion, the present case is precisely the same.

On this view, neither United States v. Leslie Salt Co., 350 U.S. 383, 76 S.Ct. 416, 100 L.Ed. 441 (1956), nor J. P. Seeburg Piano Co. v. United States, 62 Ct.Cl. 281 (1926), suggests or supports a different holding. In the former, the Supreme Court emphasized that from the beginning of the stamp tax Congress had separated "promissory notes" from "bonds, debentures, or certificates of indebtedness," taxing the first at a lower rate (if

---

7. As the court points out, ante, there is nothing helpful in the legislative history of the 1942 repealer.

8. Claims of this kind for exemption from taxation must be clearly made out. New Jersey Automobile Club v. United States,

149 Ct.Cl. 344, 346–347, 181 F.Supp. 259, 261 (1960), cert. denied, 366 U.S. 964, 81 S.Ct. 1913, 6 L.Ed.2d 1255 (1961); Hardware Underwriters & National Hardware Service Corp. v. United States, 65 Ct.Cl. 267, 283 (1928), cert. denied, 278 U.S. 645, 49 S.Ct. 81, 73 L.Ed. 559.

it imposed any tax at all). 350 U.S. at 388, 76 S.Ct. at 419. Here, as I see it, Congress included truck refrigerator units, from their inception, under the parts-and-accessories tax and authorized a separate and higher levy only for a limited span of one year. Seeburg rested heavily on the legislative history of the particular statutes (62 Ct.Cl. at 284). The general phraseology of the concluding paragraph of the opinion—quoted by the majority, ante—must be taken together with the individual circumstances of which the court had just taken full account. In this case we have nothing comparable to the legislative background in Seeburg or in Leslie Salt.

For these reasons I would grant the defendant's motion for summary judgment and dismiss the petition.